**AMBULANCE SERVICE OF RENO, INC., dba 911 Paramedics, Plaintiff-Appellant,**

v.

**NEVADA AMBULANCE SERVICES, INC., dba MEDIC I, et al., Defendants-Appellees.**

No. 87–1851.

United States Court of Appeals, Ninth Circuit.

June 12, 1987.

I.R. Ashelman II, Reno, Nev., for plaintiff-appellant.

George E. Leonard, Kansas City, Mo., Edward Dannan, Kirk S. Schumacher, Reno, Nev., for defendants-appellees.

Before SNEED, BEEZER and HALL, Circuit Judges.

SNEED, Circuit Judge:

Ambulance Service of Reno, Inc. (plaintiff) seeks injunctive relief pending its appeal from a summary judgment against it and in favor of Nevada Ambulance Services, Inc., et al. (defendants). Plaintiff asserts that defendants have engaged in anti-competitive conduct in violation of the

Sherman Act, 15 U.S.C. §§ 1 & 2, and Clayton Act, 15 U.S.C. § 15. Defendants contend that their actions are immune from antitrust liability under the doctrine of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). We agree that such immunity very likely exists and that the plaintiff has very little prospect of succeeding in its appeal. It is true that plaintiff's hardships are great, but that is not enough to tip the scale in its favor. Therefore, we set aside the stay of proceedings entered by this court and deny the request for an injunction pending appeal.

Judge Bruce L. Thompson's order of summary judgment sets forth the facts with care. We copy them at this point:

Plaintiff is a private corporation which provides emergency ambulance service. Defendant Medic I is a private corporation similarly engaged. Defendant Regional Emergency Medical Services Authority (REMSA) is a charitable corporation incorporated under the laws of the State of Nevada by direction of the Washoe County District Board of Health. Three of the defendants are local hospitals, Washoe Medical Center, Inc., Saint Mary's Hospital, Inc., and Sparks Family Hospital, Inc. The remaining defendants are political subdivisions of the State of Nevada, to wit, Washoe County, the City of Sparks, the City of Reno, and the Washoe County District Board of Health.

The legislature of the State of Nevada has granted to the seventeen Nevada counties (NRS 244.87) and to every incorporated city (NRS 266.295) the power to "displace or limit competition" in the area of ambulance service in order to provide adequate, economical and efficient service and to promote the general welfare. Express authority is granted by these statutes to award exclusive franchises and to regulate the service.

The legislature of the State of Nevada has provided for the establishment of county boards of health (NRS 439.280, et. [sic] seq.) and city boards of health (NRS 439.420). The State Board of Health, i.e., the health division of the Department of Human Resources, exercises general supervision of the local

boards and health problems throughout the state (NRS 439.005, et. [sic] seq.).

The defendant Washoe County District Board of Health is also a creature of legislative fiat. The law provides for a county and the cities therein to establish such a district board (NRS 439.370) and in that event the powers and duties of the county board of health and the city boards of health are abolished (NRS 439.-380). In this instance, the Washoe County District Board of Health was created by a cooperative agreement between the County of Washoe, the City of Sparks, and the City of Reno.

The cooperative agreement was negotiated pursuant to the authority granted by the legislature of the State of Nevada in the Interlocal Cooperation Act (NRS 277.080–277.180). The purpose of the statute is to enable local governments to pool their powers in providing services and facilities in an enlarged geographic area. The scope of the powers which may be delegated by interlocal agreement is expansive. NRS 277.100 provides:

Except as limited by NRS 280.105:*

1. Any power, privilege or authority exercised or capable of exercise by a public agency of this state, including but not limited to law enforcement, may be exercised jointly with any other public agency of this state, and jointly with any public agency of any other state or of the United States to the extent that the laws of such other state or of the United States permit such joint exercise. Any agency of this state when acting jointly with any other public agency may exercise all the powers, privileges and authority conferred by NRS 277.080 to 277.180, inclusive, upon a public agency.

2. Any two or more public agencies may enter into agreements with one another for joint or cooperative action pursuant to the provisions of NRS 277.080 to 277.170, inclusive. Those agreements become effective only upon ratification by appropriate ordinance, resolution or otherwise pursu-

ant to law on the part of the governing bodies of the participating public agencies.

In this case each of the public agencies involved (Washoe County, Sparks and Reno) amended the interlocal agreement which had established the Washoe County District Board of Health by ordinances empowering the Health District to grant exclusive franchise operation of emergency medical services.

The Health Board caused defendant REMSA to be incorporated and by resolution adopted October 22, 1986 granted to REMSA the right to provide exclusive emergency ambulance service within the Washoe County Health District. REMSA, in turn, advertised for bids and, at the time the complaint was filed, was about to enter into a contract with Medic I for such services to the exclusion of plaintiff, Ambulance Service of Reno, Inc. Plaintiff, in substance, charges an actionable conspiracy among all defendants to monopolize the business of furnishing emergency ambulance services.

* The exception of NRS 280.105 applies to Metropolitan Police Dept.

3 Excerpt of Record (E.R.) at 174–77.

█ Judge Thompson thereafter held that the "delegation by Reno, Sparks and Washoe County to the Washoe County District Board of Health of power to grant an exclusive franchise to REMSA for ambulance service," 3 E.R. at 178, was expressly authorized by the Interlocal Cooperative Act set forth above and that such delegation was appropriately accomplished. We fully agree.

█ The nub of the controversy between the parties is whether the delegation subjects the case to the two-part test set forth in *324 Liquor Corporation v. Duffy,* —— U.S. ——, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987), or the somewhat less demanding standard of *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). The two-part test of *324 Liquor Corporation* is as follows:

In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Court held that the Sherman Act does not apply "to the anticompetitive conduct of a State acting through its legislature." *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 38, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985). *Parker v. Brown* rests on principles of federalism and state sovereignty. Under those principles, "an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." *Parker v. Brown,* 317 U.S., at 351, 63 S.Ct., at 313. At the same time, "a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful." *Ibid.* Our decisions have established a two-part test for determining immunity under *Parker v. Brown.* "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself." *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc., supra,* 445 U.S. [97] at 105, 100 S.Ct. [937] at 943 [63 L.Ed.2d 233 (1980)] (quoting *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978) (plurality opinion)).

107 S.Ct. at 725.

*Town of Hallie,* on the other hand, does not require "active state supervision" when "the actor is a municipality." 471 U.S. at 46, 105 S.Ct. at 1720. The Supreme Court put it this way:

Where a private party is engaging in the anticompetitive activity, there is a real danger that he is acting to further his own interests, rather than the governmental interests of the State. Where the actor is a municipality, there is little or no danger that it is involved in a *private* price-fixing arrangement. The only real danger is that it will seek to further purely parochial public interests at the expense of more overriding state goals. This danger is minimal, however, because of the requirement that the municipality act pursuant to a clearly articulated state policy. Once it is clear that state authorization exists, there is no

need to require the State to supervise actively the municipality's execution of what is a properly delegated function. 471 U.S. at 47, 105 S.Ct. at 1720 (emphasis in original).

Plaintiff contends that the two-part test of *324 Liquor Corporation* is applicable and that active supervision by the state is lacking. It argues that REMSA is not a municipality, but only a private entity that must be actively supervised by the State of Nevada. Plaintiff then strongly contends that no such supervision exists. Defendants argue that REMSA is merely the instrument of the Washoe County District Board of Health, that it is supervised closely by that Board, and that under *Hallie* no direct supervision by the state is necessary.

This case does not fit neatly in either *324 Liquor Corporation* or *Hallie*. REMSA is not a private non-governmental entity that can be expected to pursue its own economic interests to the prejudice of the public over which "a gauzy cloak of state involvement," *Town of Hallie*, 471 U.S. at 46, 105 S.Ct. at 1720, has been thrown. On the other hand, it is neither a city, a county, nor the Washoe County District Board of Health. Its interests are not precisely the same as theirs. REMSA falls somewhere between those whose acts were being challenged in *324 Liquor Corporation* and *Hallie*.

However, we are convinced that it occupies a position much closer to *Hallie* than *324 Liquor Corporation*. Judge Thompson in his summary judgment on behalf of the defendants described the supervisorial link between REMSA and the District Board of Health as follows:

> If REMSA defaults, all its equipment and that of its contracted vendors, must be made available to the District Board of Health so that emergency ambulance service will not be interrupted (Sec. 7). The District Board of Health has authority to adjust the defined required time response to life threatening calls (Sec. 9). The rates and charges for services are approved by the District Board of Health (Sec. 11), and it may also control the orientation and training of personnel

(Sec. 14). The District Health Department assists in the public information requirement (Sec. 16). Operational data must be provided to the District Health Department on a monthly basis (Sec. 24) which is required to routinely monitor the activities.

3 E.R. at 179.

Judge Thompson related this supervision "up the line" to the State of Nevada and held that it amounted to the required active supervision. This is not a legal conclusion that is without substance; however, we prefer to treat REMSA as the instrument of the "municipality" in the *Hallie* sense, and hold that active supervision by the State of Nevada is not required.

The stay pending this hearing is lifted and the emergency motion seeking a temporary injunction pending appeal is denied.

DENIED.