**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED NATIONAL MAINTENANCE, INC., a Nevada corporation, *Plaintiff-Appellant*, <br><br> v. <br><br> SAN DIEGO CONVENTION CENTER, INC., a California corporation, *Defendant-Appellee*. | No. 12-56809 <br><br> D.C. No. 3:07-cv-02172-AJB-JMA <br><br><br> ORDER AND OPINION |

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted
April 8, 2014—Pasadena, California

Filed August 15, 2014

Before: Myron H. Bright,[*] Jerome Farris,
and Andrew D. Hurwitz, Circuit Judges.

Order;
Opinion by Judge Farris;
Concurrence by Judge Hurwitz

---

[*] The Honorable Myron H. Bright, Senior Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

## SUMMARY[**]

### Antitrust / California Tort Law

The panel filed (1) an order withdrawing its prior opinion and denying a petition for panel rehearing as moot and (2) an opinion affirming in part and reversing in part the district court's judgment after a jury trial in favor of the San Diego Convention Center Corporation on claims by United National Maintenance, a vendor of trade show cleaning services, for intentional interference with contractual relationship, antitrust violations, and intentional interference with prospective economic advantage.

The panel reversed the district court's grant of judgment as a matter of law, which overturned the jury's verdict in favor of the maintenance company on its claim that the convention center intentionally interfered with contracts between the maintenance company and providers of trade show decorator services when the convention center instituted a policy mandating that it would be the exclusive provider of cleaning services staffing.  The panel held that under California law, the tort of intentional interference with contractual relations does not apply only to parties that lack any legitimate interest in the underlying conduct.

The panel affirmed the district court's holding that it committed instructional error by not interpreting the terms of the contracts to enable the jury to understand whether the maintenance company's performance was disrupted, and that

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

this error constituted prejudicial error that warranted a new trial.

The panel affirmed the district court's grant of judgment as a matter of law on the maintenance company's Sherman Act claim, holding that the convention center possessed state action immunity from this antitrust claim.

The panel affirmed the dismissal of the maintenance company's claim for intentional interference with prospective economic advantage because this claim turned on the antitrust claim.

The panel also affirmed the district court's holding that under California law, the convention center was excluded from liability for punitive damages because it was a public entity.

Concurring, Judge Hurwitz wrote separately to emphasize that the judgment as a matter of law as to the antitrust claims also comfortably rested on the district court's holding that no jury could reasonably find that the convention center engaged either in monopolization or an attempt to monopolize by mandating that its own employees clean its building.

---

### COUNSEL

Leonard J. Feldman (argued), Jason T. Morgan, and J. Will Eidson, Stoel Rives LLP, Seattle, Washington; James R. Lance, Jacob M. Slania, and Micaela P. Banach, Kirby Noonan Lance & Hoge LLP, San Diego, California, for Plaintiff-Appellant.

Joseph T. Ergastolo (argued), John H. L'Estrange, Jr., and Andrew E. Schouten, Wright & L'Estrange, San Diego, California, for Defendant-Appellee.

Albert A. Foer, Randy M. Stutz, and Sandeep Vaheesan, American Antitrust Institute, Washington, D.C., for Amicus Curiae the American Antitrust Institute.

Kathleen M. O'Sullivan and Eric D. Miller, Perkins Coie LLP, Seattle, Washington; Jacqueline E. Young, Perkins Coie LLP, San Francisco, California, for Amici Curiae Exhibition Services & Contractors Association, Society of Independent Show Organizers, and International Association of Exhibitions & Events.

Sonya D. Winner and Cortlin H. Lannin, Covington & Burling LLP, San Francisco, California; Deborah A. Garza, Covington & Burling LLP, Washington, D.C., for Amicus Curiae International Association of Venue Managers, Inc.

## ORDER

The Opinion filed on May 14, 2014, is **WITHDRAWN**. Appellant's Petition for Panel Rehearing is **DENIED AS MOOT**.

**OPINION**

FARRIS, Senior Circuit Judge:

United National Maintenance, a nationwide vendor of trade show cleaning services, sued the San Diego Convention Center Corporation, alleging claims for 1) intentional interference with contractual relationship, 2) antitrust violations, and 3) intentional interference with prospective economic advantage. A jury returned a verdict in favor of United National on the intentional interference with contractual relationship claim but could not reach a verdict on the other claims. On a renewed motion for judgment as a matter of law by SDC, the district court found in favor of the convention center on all of the claims. The maintenance company appealed.

**I**

California has granted cities the statutory authority to construct public assembly or convention halls. Cal. Gov't Code §§ 37500–37506. Cities may appoint a commission to manage the use of the facilities. § 37506. Funds gained from operation of the convention center first go to paying the assorted expenses associated with its operation; any remaining money may then go to the city's general fund. § 37505.

In 1984, the San Diego City Council created the San Diego Convention Center Corporation to manage the operations of the San Diego Convention Center. SDC is a nonprofit public benefit corporation that is wholly owned by the city of San Diego. The San Diego City Council gave SDC the "exclusive authority to operate, market, and promote the

Center." The board of SDC is chosen by the mayor and city council of San Diego. The San Diego Municipal Code defines the city as including "Corporations wholly owned by the City . . . such as [SDC]." SDC receives city funding and annually submits a five year rolling budget.

Companies and organizations license the Center from the SDC for a specific period to host events. Licensees hire a general services decorator to coordinate event-related services. Champion Exposition Services, Freeman, and Global Experience Specialists provide decorator services for the majority of events held at the center. Each of the companies operates nationwide. Exhibitors rent booths from decorators and may also contract for other services such as cleaning. Trade show cleaning companies provide a variety of cleaning services through contracts with decorators. These services include both facility cleaning and booth cleaning.

United National Maintenance is a trade show cleaning company that operates throughout the country. UNM has contracts with GES and Champion to provide nationwide trade show cleaning services. UNM has provided services since 1989 in San Diego. Most of its work in the area is done at the San Diego Convention Center. SDC also offers trade show cleaning services to decorators who use the convention center. In the fall of 2006, an SDC executive approached Champion and GES about them hiring SDC personnel to perform trade show cleaning services. Both companies declined the SDC proposal. In July 2007, SDC instituted a new cleaning services policy. The policy mandated that SDC would be the "exclusive provider of cleaning services staffing." The policy also required that decorators pay SDC one half of all booth cleaning revenue that the decorator received as well as a $17 per hour wage for SDC employees

that provided cleaning services. UNM continued to perform on its contracts with GES and UNM while using SDC personnel to provide the cleaning services. The new requirements significantly increased the costs of performance for UNM on its contracts with Champion and GES.

On November 13, 2007, UNM filed a complaint against SDC. UNM alleged claims for interference with contract, interference with prospective economic advantage and antitrust violations. The case proceeded to trial. At the end of UNM's case-in chief, SDC filed a motion for judgment as matter of law on each of UNM's claims. The district court rejected SDC's motion. On May 4, 2011, the jury returned a unanimous verdict on UNM's intentional interference with contractual relations claim. The jury awarded UNM damages of $668,905. The jury did not reach a verdict on UNM's remaining claims.

SDC then filed a motion for new trial on UNM's intentional interference with contractual relations claim and a renewed motion for judgment as a matter of law on UNM's other claims. The district court construed SDC's motion for new trial as a motion for judgment as a matter of law. The district court granted SDC's motion on each of UNM's claims. The district court held that UNM could not assert an intentional interference with contractual relationship claim against SDC as SDC had an economic interest in the contracts. In the alternative, the district court held that SDC was entitled to a new trial as the district court had previously erred in not giving a legal interpretation of UNM's contracts with the decorators. The district court also held that UNM's antitrust claim was barred based on SDC's state-action and local government immunity. In the alternative, the district court held that UNM had failed to present sufficient evidence

on the specific elements of its antitrust claim. Finally, the district court dismissed UNM's claims for interference with prospective economic advantage and punitive damages as well as UNM's motion for injunctive relief. UNM timely appealed.

## II

We review *de novo* a district court's order granting or denying judgment as a matter of law. *See Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1138 (9th Cir. 2011) (en banc). We review *de novo* whether the district court committed instructional error in its statements of the law, *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005), as well as the district court's determinations of immunity from antitrust liability, *Grason Elec. Co. v. Sacramento Mun. Util. Dist.*, 770 F.2d 833, 835 (9th Cir. 1985).

## III

Under California law, the elements for the tort of intentional interference with contractual relations are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589–90 (Cal. 1990).

After the jury returned its verdict in favor of UNM, the district court issued a judgment as matter of law on the basis that the tort of intentional interference only applies to parties that lack any "legitimate interest . . . in the underlying

contract." The district court heavily relied on *dictum* from a prior opinion of this court that stated "California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party stranger to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001).

The district court's reading of *Marin Tug* to add an additional requirement to the tort of intentional interference with contractual relationship is not justified for several reasons. First, the plaintiff in Marin Tug sued under the tort of "intentional interference with prospective economic advantage," and we specifically stated that the tort of "intentional interference with contractual relations" was "not at issue in [the] appeal." *Id.* at 828 n.3. That tort is distinct, and California law "draw[s] and enforce[s] a sharpened distinction" between the two. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 750 (Cal. 1995). Our statements in *Marin Tug* do not directly apply to the tort at issue in this appeal.

Second, under California law, the pertinent economic relationship is the one that exists between the two contracting parties. They are the ones that have a "direct interest or involvement in that relationship." *Id.* at 832. Liability for this tort exists to protect the parties to that relationship from "interference by a stranger to the agreement." *Della Penna*, 902 P.2d at 750. Contractual liability, in turn, protects the contracting parties from the actions of their contractual partners. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 869 P.2d 454, 459–63 (Cal. 1994) (rejecting an attempt

to create tort liability under a theory of conspiracy for parties to the contractual relationship). To shield parties with an economic interest in the contract from potential liability would create an undesirable lacuna in the law between the respective domains of tort and contract. A party with an economic interest in a contractual relationship could interfere without risk of facing either tort or contract liability. This result is particularly perverse as it is those parties with some type of economic interest in a contract whom would have the greatest incentive to interfere with it. Such a result would hardly serve the established goal of protecting "a formally cemented economic relationship … from interference by a stranger to the agreement." *Della Penna*, 902 P.2d at 750.

Third, *Marin Tug* represented a hesitant attempt to clarify the unresolved question of the "precise type of wrongfulness necessary to trigger liability for intentional interference with prospective economic advantage." *Marin Tug*, 271 F.3d at 831–32 (noting that it proceeded "with some trepidation into this area of California law"). Subsequent to *Marin Tug*, California courts have repeatedly held that "in California, the law is settled that 'a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract.'" *See e.g., Reeves v. Hanlon*, 95 P.3d 513, 517 (Cal. 2004) (quoting *Pacific Gas*, 270 P.2d at 589). In a detailed discussion, the California Court of Appeal held that *Marin Tug* "was not extending immunity from contract interference claims to an even broader, more attenuated class of persons." *Woods v. Fox Broad. Sub., Inc.*, 28 Cal. Rptr. 3d 463, 472 (Ct. App. 2005). Other California Court of Appeal decisions have reached the same conclusion. *See Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp.*, 164 Cal. Rptr. 3d 811, 824–26 (Ct. App. 2013). Since *Marin Tug* did not specifically address the tort of intentional interference

with contract, the scope of that tort remains an open question in this circuit. We "must follow the state intermediate appellate court decision[s] unless [we] find[] convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007). SDC points to no convincing evidence that the California Supreme Court would change its long held position on the potential tort liability of strangers to a contract. *See e.g., Reeves*, 95 P.3d at 517.

Fourth, California courts have repeatedly held that parties with an economic interest in a contractual relationship may be liable for intentional interference with that contract. *See Applied Equipment*, 869 P.2d at 455–56; *Woods*, 28 Cal. Rptr. 3d at 465–67 (company potentially liable for interference in a contract between a partially-owned subsidiary and several of its employees); *Powerhouse Motorsports*, 164 Cal. Rptr. 3d at 824–26 (manufacturer may be liable for interference with a sales contract between a franchise operator and a potential new owner). SDC argues that there are several cases where a party with an economic interest in a contract was prevented from bringing an intentional interference claim. Those cases are distinguishable.[1] In *Mintz v. Blue Cross of California*, the California Court of Appeal found that a claim could not arise as the defendant was "either a contracting party or its agent." 92 Cal. Rptr. 3d 422, 430 n.3 (Ct. App. 2009). There is no suggestion here that SDC was the agent of either Champion or GES. In *PM Group, Inc. v. Stewart*, the

---

[1] Also distinguishable is a case that SDC does not cite. *See Kasparian v. Cnty. of Los Angeles*, 38 Cal. App. 4th 242 (Ct. App. 1995). Like *Marin Tug*, *Kasparian* only addressed "intentional interference with prospective economic advantage," *id*. at 257, a different tort from the "intentional interference with contract" at issue here.

California Court of Appeal reiterated that a contracting party could not be tortiously liable for interfering with the performance of its own contract; thus, by extension, a contracting party could not be held liable for interfering with the performance of subcontracts if that claim hinged on the defendant's failure to perform on the original contract. 64 Cal. Rptr. 3d 227, 235–36 (Ct. App. 2007). UNM's theory of liability in this case is not based on SDC's failure to perform on a contract with Champion or GES.

We therefore reverse the district court holding that under California law, SDC cannot be held liable for the tort of intentional interference with contractual relationship. The JMOL granted on that ground is also reversed.

## IV

During trial, the district court rejected SDC's request for a legal interpretation of potential conditions precedent in UNM's contracts with the decorators. The district court held that the model jury instructions on an intentional interference with contractual relationship claim were sufficient: the two elements at issue were "1. That there was a contract between plaintiff and defendant" and "4. That defendant's conduct prevented performance or made performance more expensive or difficult." California Civil Jury Instructions § 2201.

The fourth element examines whether plaintiff has suffered "a disruption or breach of their contractual rights." *Woods*, 28 Cal. Rptr. 3d at 473. After the jury returned its verdict, the district court held that a new trial was warranted because he should have legally interpreted UNM's contracts with GES and Champion in order to allow the jury to determine whether they contained relevant conditions

precedent to the ability of GES and Champion to hire UNM for trade show cleaning services. If UNM's contractual rights were conditioned on the usage policies of SDC, then SDC's change in policy determined UNM's contractual rights instead of disrupting UNM's performance of the contract. The jury's request for clarification on this point indicates the importance of this issue.

UNM argues that a contract with a condition precedent may still be a valid, enforceable contract. UNM's argument focuses on element one of the claim – the validity of the contracts between UNM and the decorators. California law on this topic is somewhat murky. *Compare Reeves*, 95 P.3d at 519–20 (no intentional interference claim for at-will employment contracts) *with SCEcorp v. Superior Court*, 4 Cal. Rptr. 3d 372, 377 (Ct. App.1992) (potential claim for contract that was conditioned on regulatory approval). SDC's proposed jury instructions, however, focus on the separate element of disruption. For the jury to understand whether UNM's performance was disrupted required the district court to determine what contractual rights UNM possessed. This thus required a legal interpretation of the contract and the trial court correctly concluded that it erred in this case by not doing so.

In cases of instructional error, there is a presumption of prejudice. *Medtronic, Inc. v. White*, 526 F.3d 487, 493 (9th Cir. 2008). UNM has provided no argument for why the jury "would have reached the same verdict had it been properly instructed." *Id* (quoting *Galdamez v. Potter*, 415 F.3d 1015, 1025 (9th Cir. 2005)) (internal quotation marks omitted). It has failed to rebut the presumption of prejudice.

We therefore affirm the district court's holding that it committed instructional error by not interpreting the terms of the contract and that this error constituted prejudicial error that warrants a new trial.

**V**

States receive immunity from potential antitrust liability as "'nothing in the language of the Sherman Act or its history' . . . suggested that Congress intended to restrict the sovereign capacity of the States to regulate their economies . . . ." *FTC. v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003, 1010 (2013) (quoting *Parker v. Brown*, 317 U.S. 341, 350 (1943)). Nonstate actors may also receive "immunity from the federal antitrust laws" if they are "carrying out the State's regulatory program." *Id.* at 1010.

The Supreme Court has articulated a two-part test to determine whether nonstate actors are entitled to this immunity: "First, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; second, the policy must be actively supervised by the State itself." *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980) (internal quotation marks omitted). The requirement of active supervision, however, does not apply "to the activities of local governmental entities," as "they have less of an incentive to pursue their own self-interest under the guise of implementing state policies." *Phoebe Putney*, 133 S. Ct. at 1011.

In order to pass the clear-articulation test, the "anticompetitive effect" in dispute should be the "foreseeable result of what the State authorized." *Id* (internal quotation marks omitted). It is not necessary, however, for a state

legislature to "expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 43 (1985). We review each challenged anticompetitive act to determine whether it was the foreseeable result of what the state authorized. *Phoebe Putney*, 133 S. Ct. at 1012; *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 373 (1991). In applying the "clear-articulation test," the Supreme Court has distinguished between general grants of either local authority or corporate power and specific delegations of an authority to act or regulate where "the displacement of competition . . . is the foreseeable result of what the statute authorizes." *Omni*, 499 U.S. at 372–73 (internal quotation marks omitted). Only the latter qualifies for immunity. For example, the Court has found that Georgia's grant of general corporate powers to a hospital authority did not also entail an authorization to use those powers in an anticompetitive fashion. *Phoebe Putney*, 133 S. Ct. at 1014. By contrast, the "clear-articulation" test was satisfied when Wisconsin expressly allowed cities to limit the municipal provision of sewage services to neighboring unincorporated areas and consequently gave those cities the authority to make the provision of sewage services contingent on annexation of the unincorporated areas. *Hallie*, 471 U.S. at 41. Similarly the test was fulfilled by South Carolina's delegation of zoning authority over local billboards to a city as "[t]he very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition . . . ." *Omni*, 499 U.S. at 373. The "clear articulation" test thus requires both a specific delegation of authority by the state and some indication that the state has "affirmatively contemplated the displacement of competition." *Phoebe Putney*, 133 S. Ct. at 1006. The

indication must be more than mere neutrality but need not rise to the level of explicit authorization. *See id.* at 1007.

California's delegation of authority satisfies both of these elements with relation to SDC's decision to hire cleaning staff internally. California Government Code § 37506 states that "by ordinance the legislative body may appoint a commission to select the site for the building, supervise its construction, and manage its use. By ordinance, the legislative body shall prescribe the powers and duties of the commission." This grant of authority does not just give San Diego permission to play in the market by building a convention center. Rather, the legislature authorized San Diego to create a commission that would "manage the use" of the convention center. This type of managerial authorization is distinct from a general grant of corporate authority that simply allows a state subdivision to act.

There is also substantial evidence that the California legislature contemplated that the Convention Center need not hire outside contractors to clean its building. The California legislature's grant of statutory authority stated that funds from the convention center would be used first to pay for the convention center and second for the benefit of the municipality. Cal. Gov't Code § 37505. This specification naturally contemplates that the convention center will be operated in order to generate profits for the municipality. A convention center represents a substantial financial investment by a municipality. In order to ensure the success of that investment, it is foreseeable that an operator of the convention center may exclusively provide cleaning staff to ensure the success of that financial commitment. The ensuing profit-generating actions challenged here were the "ordinary

result of the exercise of authority delegated by the state legislature." *Phoebe Putney*, 133 S. Ct. at 1013.

The active supervision requirement "serves essentially an evidentiary function: it is one way of ensuring that the actor is engaging in the challenged conduct pursuant to state policy." *Hallie*, 471 U.S. at 46–47. It prevents private actors from engaging in an anticompetitive activity solely to further "[their] own interests, rather than the governmental interests of the State." *Id.* at 47. Those same concerns, however, do not apply to a municipality, as "there is little or no danger that it is involved in a *private* price-fixing arrangement." *Id.* The danger that it may seek "purely parochial public interests at the expense of more overriding state goals" is satisfactorily addressed by the clear-articulation test. *Id.*

UNM argues that the active supervision requirement should be applied to SDC's actions. UNM heavily emphasizes that SDC is a public, non-profit corporation rather than a municipality. San Diego's municipal code, however, defines the city itself as including SDC. In a similar case, we found that a charitable corporation incorporated by a county board of health that provided exclusive ambulance services for the county served as an instrument of the municipality. *Ambulance Serv. of Reno, Inc. v. Nev. Ambulance Servs., Inc.*, 819 F.2d 910, 913 (9th Cir. 1987) (emphasizing that the district board of health supervised the services of the corporation and retained rights to the equipment of the corporation in the event of a corporate default). SDC's relationship with San Diego also shows that SDC acts as the instrument of San Diego: (1) San Diego appoints all of SDC's board members, (2) upon dissolution, SDC's asserts revert back to San Diego; (3) SDC must publicly account for its operations. Overall, SDC acts as an

agent that operates the convention center for the benefit of its principal, the city of San Diego. It is an extension of the municipality of San Diego and thus does not require active supervision by the state in order to retain its immunity from antitrust liability.

Furthermore, the specific facts indicate there is no need for the evidentiary function of active supervision. Although SDC's actions may reflect the pursuit of parochial interests, there is no evidence that it entered into any kind of private price-fixing arrangement with other convention center operators. This fact distinguishes SDC from other cases where groups of private actors, entrusted with state regulatory authority over a profession, may have taken actions to further their own private interests. *See e.g.*, *N.C. State Bd. of Dental Exam'rs v. FTC*, 717 F.3d 359 (4th Cir. 2013), *cert. granted*, 134 S. Ct. 1491 (2014) (need to fulfill the active supervision test where a state dental association, primarily composed of dentists, prevented non-dentists from offering teeth whitening services).

We affirm the district court's holding that SDC possessed state action immunity from UNM's antitrust claim. Thus, it's unnecessary to address the district court's alternative holding on the merits of the antitrust claim.

## VI

The district court dismissed UNM's claim for intentional interference with prospective economic advantage. This tort requires UNM to establish "that [SDC's] interference was wrongful by some measure beyond the fact of the interference itself." *Della Penna*, 902 P.2d at 751 (internal quotation marks omitted). UNM's assertion of independent wrongfulness is

based on the antitrust claims. That claim's failure dooms this claim.

UNM appeals the district court's order denying it permanent injunctive relief. No permanent injunction should issue as we hold that a new trial is warranted on UNM's claim for intentional interference with contractual relationship.

UNM also appeals from the district court's order that excluded any liability for SDC from punitive damages. In California, a public entity is not liable for punitive damages. Cal. Gov't Code § 818. SDC is a public entity as it is a wholly owned subsidiary and instrumentality of San Diego formed for governmental purposes and vested with governmental powers. Cal. Gov't Code § 811.2. Under California law, it cannot be liable for punitive damages.

The judgment of the district court is **AFFIRMED IN PART AND REVERSED IN PART**.  Each party shall bear its own costs on appeal.

---

HURWITZ, Circuit Judge, concurring:

I concur in Judge Farris' thorough opinion.  I write separately only to emphasize that the judgment as a matter of law as to UNM's antitrust claims also comfortably rests on another ground identified by the district judge: No jury could reasonably find that SDC engaged either in monopolization or an attempt to monopolize by mandating that its own employees clean its building. *See Cal. Computer Prods., Inc. v. Int'l Bus. Machs. Corp*., 613 F.2d 727, 734 (9th Cir. 1979)

("[A] directed verdict is proper, even in an antitrust case, when 'there is no substantial evidence to support the claim.'" (quoting *Santa Clara Valley Distrib. Co. v. Pabst Brewing Co.*, 556 F.2d 942, 945 n.1 (9th Cir. 1977))).

To succeed on its Sherman Act monopolization claims, UNM had the burden of proving that SDC possessed monopoly power over a specific product in a specific geographic market.   15 U.S.C. § 2; *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010).  The district court concluded that the relevant downstream market was, at best, trade show cleaning services for exhibition and meeting spaces in the San Diego area.  Despite the testimony of UNM's expert, no reasonable finder of fact could conclude that the relevant geographic market for cleaning services consisted *only* of the San Diego Convention Center.  It beggars reason to define the relevant market as a single customer who decides to use its own employees to perform routine cleaning services, rather than hire others do so.  *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them").   UNM employees—who perform typical cleaning services, such as vacuuming and wiping down exhibition booths—plainly could clean other meeting spaces and convention facilities in San Diego.  *See Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir. 2001) (Sotomayor, J.) ("A greater availability of substitute buyers indicates a smaller quantum of market power on the part of the buyers in question.").

SDC represents only 43% of the cleaning services market for convention and meeting facilities in the San Diego area. That is not enough to establish actual monopolization.  *See*

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1274 (9th Cir. 1975).  Although SDC's market share might suffice in connection with an attempted monopolization claim, *see Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995), such a claim also requires "predatory or anticompetitive conduct," *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1405 (9th Cir. 1986).  The district correctly held that no rational finder of fact could conclude that SDC acted anticompetitively and without a legitimate business purpose by using its own employees to clean its own building.