Filed 12/16/22

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SHARLENE ALLEN, | D080045 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00008163-CU-OE-CTL) |
| SAN DIEGO CONVENTION CENTER CORPORATION, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy Taylor, Judge. Affirmed.

Setareh Law Group, Shaun Setareh, Thomas Segal, for Plaintiff and Appellant.

McDougal, Love, Boehmer, Foley, Lyon & Mitchell, Steven E. Boehmer, and Matthew A. Thurmer for Defendant and Respondent.


Sharlene Allen is a former employee of the San Diego Convention Center Corporation (SDCCC). After SDCCC terminated Allen, she filed the present class action lawsuit against SDCCC alleging various violations of the

Labor Code. The trial court largely sustained SDCCC's demurrer to the complaint on the grounds that the corporation was exempt from liability as a government entity. The court, however, left intact one claim for untimely payment of final wages under Labor Code sections 201, 202, and 203,[1] and derivative claims under the Unfair Competition Law (UCL, Bus. & Prof. Code, § 17200, et seq.) and the Private Attorneys General Act (PAGA, § 2698, et seq.).

Allen then moved for class certification for her surviving causes of action. The trial court denied the motion based on Allen's concession that her claim for untimely final payment was not viable because it was derivative of the other claims dismissed at the demurrer stage. Allen now appeals from the denial of the motion for class certification, which she asserts was the death knell of her class claims and thus, the lawsuit. She argues the trial court's ruling on the demurrer was incorrect because SDCCC did not establish as a matter of law that it was exempt from liability. In response, SDCCC asserts that Allen's appeal should be dismissed as taken from a nonappealable order. Alternatively, SDCCC contends the trial court's order sustaining its demurrer was correct, and the subsequent denial of class certification should be affirmed. We reject SDCCC's assertion that the order is not appealable. However, we agree that class certification was properly denied by the trial court and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 2014, SDCCC hired Allen as a guest services representative on an hourly basis. She worked for SDCCC until 2019, when she was terminated. She filed the putative class action complaint initiating this lawsuit in

---

[1] Subsequent undesignated statutory references are to the Labor Code.

2

February 2020, and her First Amended Complaint (FAC), the operative complaint, in April.

In the FAC, Allen alleged that SDCCC violated various provisions of the Labor Code. The basis for her complaint was that SDCCC failed to pay workers for the time spent walking to and from their meal and rest breaks, and it required workers to work during breaks if they received a call on hand-held radios that they were required to carry at all times. Allen also alleged SDCCC did not advise workers of their right to take a second meal period when they worked more than 10 hours in one shift, and failed to reimburse workers for the cost of non-slip shoes that were necessary to perform their jobs.

Allen asserted eight Labor Code violation claims against SDCCC based on these general allegations. She alleged the corporation (1) failed to provide meal periods (§§ 226.7, 512, 1198, first cause of action); (2) failed to provide rest periods (§§ 226.7, 1198, second cause of action); (3) failed to pay hourly wages for time worked during meal and rest periods (§§ 223, 510, 1194, 1194.2, 1197, 1197.1, 1198, third cause of action); (4) failed to pay vacation wages (§ 227.3, fourth cause of action); (5) failed to pay sick time (§ 246, et seq., fifth cause of action); (6) failed to indemnify Allen and others for the cost of non-slip shoes, which she alleged were necessary to her work (§ 2802, sixth cause of action); (7) failed to provide accurate written wage statements (§ 226, seventh cause of action); and (8) failed to timely pay all final wages (§§ 201, 202, 203, eighth cause of action). Allen also alleged that her first, second, third, fourth, fifth, and sixth causes of action constituted violations of the UCL (ninth cause of action), and sought civil penalties under PAGA as a representative of other current and former SDCCC employees for the alleged Labor Code violations (tenth cause of action).

3

SDCCC demurred, arguing that it was exempt from liability for the alleged Labor Code violations as a public entity and wholly-owned subsidiary and instrumentality of the City of San Diego. The demurrer also argued that the inaccurate wage statement, UCL, and PAGA causes of action failed because they were derivative of the other Labor Code violation claims. Allen opposed the demurrer, arguing, among other things, that SDCCC had not shown it was an "other municipal corporation" under section 220, subdivision (b), as established by case law and, thus, was not exempt from liability.

After oral argument, the trial court largely sustained the demurrer. The court concluded that SDCCC had conclusively established it was a public entity for purposes of Allen's first through seventh causes of action. The court overruled the demurrer as to the eighth cause of action for failure to timely pay final wages, agreeing with Allen that SDCCC had not established it was an "other municipal corporation." The court also left in place Allen's UCL and PAGA causes of action based on that claim.

Shortly after the court's demurrer ruling, Allen brought her motion for class certification, seeking to certify a class of "all non-exempt employees who were required to carry a radio during breaks who worked for San Diego Convention Corporation in California between February 11, 2016 and the present," and a class of "all non-exempt employees who worked for San Diego Convention Corporation in California between February 11, 2016 and the present who were not timely paid their final wages." SDCCC opposed the motion, asserting Allen was attempting to circumvent the court's demurrer ruling by seeking to certify her derivative claim for timely payment of final wages under sections 201, 202, and 203. SDCCC also asserted Allen was not an adequate class representative of the remaining claim because she received

4

her final paycheck on a timely basis. In addition, SDCCC argued there were only eight former employees who could allege such a claim, precluding certification because the proposed class lacked sufficient numerosity.

In reply to her motion for class certification, Allen stated her claim for timely final payment under section 203 was derivative of her claims for unpaid meal and rest breaks, and thus she was a proper class representative. Further, the other requirements for class certification could be satisfied for this derivative, and still live, claim.

After oral argument on the motion, the trial court denied class certification. The court concluded that because it dismissed Allen's claim "related to missed meal and rest periods at the demurrer stage," she no longer had "a claim for derivative waiting time penalties under section 203, and cannot satisfy the typicality requirement." The court likewise found certification of Allen's UCL claim was not warranted because the FAC alleged unlawful conduct based on Labor Code violations for which SDCCC was exempt from liability and that had been dismissed on demurrer. The court's order denying the motion concluded by stating the PAGA and individual claims under sections 201, 202, and 203 remained set for trial. Thereafter, Allen filed her notice of appeal.

## DISCUSSION

### I

### *Appealability*

In its brief, SDCCC asks this court to dismiss Allen's appeal as taken from a non-appealable order. It argues that because Allen's PAGA and individual claims remain, the denial of class certification did not constitute the "death knell" of the case and the order is not appealable. Allen responds that the remaining claims are not viable because they are derivative of the

5

claims the court dismissed at the demurrer stage.  We agree with Allen that the denial of class certification effectively ended her case, and the order is therefore appealable.

"Under the one final judgment rule, ' "an appeal may be taken only from the final judgment in an entire action." ' [Citations.]  ' "The theory [behind the rule] is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." ' " (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756 (*Baycol*).)  An exception to the rule, however, exists for the denial of class certification.  Known as the "death knell doctrine," the rule is a " ' "tightly defined and narrow' " exception to the one-final-judgment rule …." (*Williams v. Impax Laboratories, Inc.* (2019) 41 Cal.App.5th 1060, 1066 (*Williams*).)

"Under this exception, an order is appealable when 'it effectively terminates the entire action as to [a] class, in legal effect being "tantamount to a dismissal of the action as to all members of the class other than plaintiff." ' [Citations.]  Thus, an order determining that a plaintiff cannot 'maintain his [or her] claims as a class action but [can] seek individual relief' is immediately appealable.  [Citation.]  Because death knell orders are directly appealable, 'a plaintiff who fails to appeal from one loses forever the right to attack it.  The order becomes final and binding.' " (*Williams, supra*, 41 Cal.App.5th at pp. 1066–1067.)

"To qualify as appealable under the death knell doctrine, an order must '(1) amount[ ] to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no formal final judgment will ever be entered.' (*Baycol, supra*, 51 Cal.4th at p. 759.)  Among the orders that

6

generally qualify are '[a] trial court's decision to sustain a demurrer to class allegations without leave to amend, deny a motion for class certification, or grant a motion to decertify a class.' " (*Williams, supra*, 41 Cal.App.5th at p. 1067.) The "death knell" doctrine also applies to representative claims under PAGA. An order dismissing a representative PAGA claim is immediately appealable to the extent it effectively rings the "death knell" of that claim. (*Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, 200–203.) " 'What ultimately matters, however, is 'not the form of the order or judgment but its impact.' " (*Williams, supra*, 41 Cal.App.5th at p. 1067.)

"[T]he death knell doctrine does not apply to orders only partially certifying a class. … '[O]rders that only limit the scope of a class or the number of claims available to it are not similarly tantamount to dismissal and do not qualify for immediate appeal under the death knell doctrine; only an order that entirely terminates class claims is appealable.' " (*Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291, 308 (*Munoz*).)

Here, the demurrer left standing just one substantive class claim based on sections 201, 202 and 203, under which Allen challenged the timely payment of final wages. As her briefing before this court and the class certification denial order make clear, however, Allen's claim under these three statutes was solely derivative of her claims for meal and rest break pay under other provisions of the Labor Code. She does not allege a direct violation of sections 201, 202, and 203 because she timely received her final wage payment.

Because the meal and rest break violations were dismissed at the demurrer stage, the trial court found class certification was not warranted since Allen could not satisfy the typicality requirement. Further, while the

7

court did not outright dismiss Allen's PAGA claim, all that remained to form the basis of the claim was the derivative violation of sections 201, 202, and 203, which the class certification order made clear were no longer viable.

SDCCC relies on *Munoz, supra*, 238 Cal.App.4th 291 to support its argument that dismissal of the appeal is warranted. Unlike this case, after the denial of class certification in *Munoz*, the plaintiff had a still-viable PAGA claim. Thus, *Munoz* appropriately concluded that the denial of class certification did not constitute the death knell of the case. "Given the potential for recovery of significant civil penalties if the PAGA claims are successful, as well as attorney fees and costs, plaintiffs have ample financial incentive to pursue the remaining representative claims under the PAGA and, thereafter, pursue their appeal from the trial court's order denying class certification." (*Id.* at p. 311.) Unlike here, where the PAGA claim is not viable, in *Munoz*, "[d]enial of class certification where the PAGA claims remain in the trial court would not have the 'legal effect' of a final judgment." (*Ibid.*)

As Allen asserts, the class certification order left the case without either class or PAGA claims and constituted the death knell of the litigation. The order is, therefore, appealable.

## II

### *SDCCC Is a Public Entity Not Subject To The Labor Code Violations Alleged by Allen*

Allen's primary contention on appeal is that the court erred by sustaining the demurrer based on the court's finding that SDCCC was a public entity. She argues the court improperly relied on federal authority to reach this conclusion. SDCCC responds that it established as a matter of law its status as a public entity, exempt from the Labor Code provisions Allen

8

alleges it violated.  Thus, it argues, the trial court properly sustained its demurrer.

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." '  [Citation.]  'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.'  [Citation.]  In reviewing the complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.'  [Citation.]

"Further, '[i]f the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.  ...  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  ...  The plaintiff has the burden of proving that an amendment would cure the defect.'  [Citation.]  '[S]uch a showing can be made for the first time to the reviewing court….' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153–1154.)

As in other areas of the law, governmental actors enjoy protection from liability under the Labor Code unless a statute specifically brings a public employer within its ambit.  (See *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 330 [" 'Generally … provisions of the Labor Code apply only to employees in the private sector unless they are specifically made applicable to public employees.' "]; *Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729, 736 ["traditionally, 'absent express

9

words to the contrary, governmental agencies are not included within the general words of a statute' "] (*Johnson*).) Here, the parties agree that the Labor Code provisions at issue do not apply to public employers. They dispute, however, whether SDCCC is a public employer.[2]

In *Johnson, supra*, 174 Cal.App.4th 729, the Fifth District Court of Appeal considered whether the provisions requiring meal and rest breaks (§§ 510 and 512), allegations central to Allen's complaint against SDCCC, were applicable to a water storage district. *Johnson* rejected the employee's assertion that the trial court improperly sustained the water district's demurrer to its class action claims "because those sections do not exempt public entities." (*Johnson,* at p. 736.) The court upheld the established principal that "unless Labor Code provisions are specifically made applicable to public employers, they only apply to employers in the private sector," and it concluded that "[s]ince sections 510 and 512 do not expressly apply to public entities," they were not applicable to the water district. (*Id.* at p. 733.) As the trial court here concluded, the other provisions of the Labor Code that Allen alleges SDCCC violated—sections 223, 226.7, 227.3, 246, 226, and

---

[2]     As the trial court determined, Allen's derivative claim for timely final payment is subject to a different statutory provision governing the parameters of government liability. That provision, section 220, subdivision (b), states that "Sections 200 to 211, inclusive, and Sections 215 to 219, inclusive, do not apply to the payment of wages of employees directly employed *by any county, incorporated city, or town or other municipal corporation. All other employments are subject to these provisions*." (Italics added.) Neither party challenges the trial court's determination that SDCCC did not qualify as an "other municipal corporation" as a matter of law.

2802—also do not expressly apply to public entities, and Allen makes no argument to the contrary.[3]

Rather, Allen argues that the trial court erred by relying on *United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.* (9th Cir. 2014) 766 F.3d 1002 (*United*), to support its determination that SDCCC is a public entity. We disagree. In its demurrer briefing, SDCCC asserted it was a public entity as a matter of law, and cited to the Ninth Circuit opinion in *United* to support this fact. In *United*, the court considered whether SDCCC was a public entity for purposes of determining its immunity from potential antitrust liability under the federal Sherman Act. (*United,* at p. 1009.) The *United* plaintiff was a vendor of trade show cleaning services that challenged SDCCC's employment of its own cleaners as anti-competitive. (*Id*. at p. 1005)

Under the U.S. Supreme Court's antitrust jurisprudence, nonstate actors are entitled to immunity where the challenged restraint is one "clearly articulated and affirmatively expressed as state policy" and "actively supervised by the State itself." (*United, supra*, 766 F.3d at p. 1009.) However, the active supervision requirement "does not apply 'to the activities of local governmental entities,' as 'they have less of an incentive to pursue

---

[3]     Three cases cited by the trial court in its order sustaining the demurrer involved disputes over whether the Labor Code protections should be applied to public entities, and not disputes over whether the entities were properly characterized as public. We agree with Allen that these cases do not establish SDCCC is a public entity. (See *Johnson, supra*, 174 Cal.App.4th at p. 733; *California Correctional Peace Officers' Assn v. State of California* (2010) 188 Cal.App.4th 646, 650 [affirming trial court's determination that wage and hour statutes do not apply to public employees]; *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 332 [holding that Labor Code section 2802 does not require public entities to pay claims for costs related to employee work uniforms].) These cases do support the trial court's general finding that the Labor Code provisions at issue in this case do not apply to public entities.

their own self-interest under the guise of implementing state policies.' " (*Id.* at pp. 1009–1010.)  The court concluded SDCCC was a local government entity, entitled to immunity, based on several facts that also apply here.  Specifically, *United* noted that "San Diego's municipal code … defines the city itself as including SDC[CC]," and that SDCCC's "relationship with San Diego also shows that [it] acts as the instrument of San Diego:  (1) San Diego appoints all of SDC[CC]'s board members, (2) upon dissolution, SDC[CC]'s assets revert back to San Diego; (3) SDC[CC] must publicly account for its operations.  Overall, SDC[CC] acts as an agent that operates the convention center for the benefit of its principal, the city of San Diego." (*Id.* at p. 1011.)

Although considered in the context of the clear-articulation requirement to determine antitrust immunity, *United* noted that "California [state law] has granted cities the statutory authority to construct public assembly or convention halls," that cities may appoint a commission to manage the use of the facilities," and that under state law, "[f]unds gained from operation of the convention center first go to paying the asserted expenses associated with its operation" and "any remaining money may then go to the city's general fund." (*United, supra*, 766 F.3d at p. 1005, citing Gov. Code, §§ 37500–37506.)  We agree with SDCCC that these undisputed facts establish as a matter of law that it is a public entity, which is not subject to the Labor Code provisions Allen alleges it violated.

Allen argues that *United* does not establish SDCCC is a public entity because it was decided in context of the federal Sherman Act, and the case's procedural posture was an appeal after trial.  These differences, however, do not show that SDCCC is not a public entity.  The factual basis for the determination in *United* is the same as that made here for purposes of determining whether SDCCC is a public entity.  Those facts establish SDCCC

12

is an extension of the City of San Diego.  Indeed, Allen does not disagree with the facts set forth in *United* about SDCCC, rather she asserts only they were deduced at trial.  However, *United*'s determination of SDCCC's public status was determined by the trial court on a motion for judgment as a matter of law.  (*United, supra*, 766 F.3d at p. 1006.)  Allen posits no additional facts that would be necessary to determine whether SDCCC is a public entity and provides no argument concerning how her complaint could be modified to show SDCCC is not a public entity.

Allen also relies on *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164 (*Wells*) to support her assertion that SDCCC should not be considered a public entity for purposes of the Labor Code provisions at issue. Her reliance is misplaced.  *Wells*, an appeal from judgment entered after demurrer, considered the application of the California False Claims Act (CFCA, Gov. Code, § 12650, et. seq.) and the UCL to several charter schools and the public school districts under which they operated.  (*Wells*, at pp. 1178–1179.)  After first determining the CFCA did not apply to the school district defendants, the court rejected the charter schools' assertion that the immunity afforded the school districts should extend to the charter schools, which were subject to oversight by the immune public districts.  (*Id*. at p. 1189.)  The court rejected this argument, concluding that the charter schools were not public entities.  (*Id*. at pp. 1200–1201.)

*Wells* stated, "Though charter schools are deemed part of the system of public schools for purposes of academics and state funding eligibility, and are subject to some oversight by public school officials [citation], the charter schools here are *operated*, not by the public school system, but by distinct outside entities—which the parties characterize as non-profit corporations— that are given substantial freedom to achieve academic results free of

13

interference by the public educational bureaucracy. The sole relationship between the charter school operators and the chartering districts in this case is through the charters governing the schools' operation. Except in specified respects, charter schools and their operators are 'exempt from the laws governing school districts.' " (*Wells, supra*, 39 Cal.4th at pp. 1200–1201.)

The SDCCC was formed under the authority of state law, operates solely for the benefit of the municipality, and is defined by the City of San Diego's municipal code as part of the city. While the non-profit corporation may have some independence in its management of the facility, unlike the charter schools at issue in *Wells*, it is an agent of the City of San Diego, which appoints its leadership and "must publicly account for its operations." (*United, supra*, 766 F.3d at p. 1011.) Because of these facts, SDCCC is not an independent corporation like the operators of the charter schools in *Wells*. This critical difference supports the trial court's determination that SDCCC is a public entity. Accordingly, it is not subject to the Labor Code provisions at issue, which contain no express inclusion of public entities.[4] (See *Johnson,*

---

[4]    Allen makes two additional arguments concerning *Wells*. She states that "[a]t a minimum *Wells* shows that issue required evidence and should not have been resolved on a demurrer." Contrary to Allen's argument, however, *Wells* was decided at the demurrer stage. (*Wells, supra*, 39 Cal.4th at pp. 1183–1184.) The California Supreme Court reversed the trial court's order sustaining the demurrer and finding the charter school defendants shared immunity from the CFCA and UCL afforded to the public school districts that governed them, and affirmed the order sustaining the demurrer as to the district defendants. (*Ibid*.)

*supra,* 174 Cal.App.4th at p. 736 ["appellant's position is contrary to an established rule that has been recognized by the Legislature, i.e., public entities are not subject to a general statute unless expressly included"].)

DISPOSITION

The order is affirmed.  Respondent is awarded the costs of appeal.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


IRION, J.

---

Allen also argues *Wells* supports her contention that it is inappropriate to look to *United*, as a federal case, to determine SDCCC's status as a public entity.  This argument also lacks merit.  The *Wells* court distinguished federal cases interpreting the federal False Claims Act, which it determined were unpersuasive because of the significant differences between the statutory language in the federal law and the CFCA that governed whether the charter schools were "persons" within the meaning of those statutes.  *United*, however, did not base its determination that SDCCC was a public entity on the language of a federal statute.  Rather, *United* looked to the same state and local laws we apply here to determine SDCCC's public status.  (*United, supra*, 766 F.3d at pp. 1010–1011.)

15