[No. B239014. Second Dist., Div. Six. Apr. 3, 2013.]

MAJ I. HAGMAN, as Trustee, etc., Plaintiff and Respondent, v. MEHER MOUNT CORPORATION, Defendant and Appellant.

84

## Counsel

SM Sanders Law Group and Stephen M. Sanders for Defendant and Appellant.

Neil D. Kalin for California Association of Realtors as Amicus Curiae on behalf of Defendant and Appellant.

Terrance B. Rodsky for Plaintiff and Respondent.

## Opinion

**HOFFSTADT, J.**[*]—In this boundary dispute, one neighbor seeks to quiet title by adverse possession to an adjoining piece of his neighbor's land that he inadvertently fenced in and later improved. The unusual twist is that the neighboring land on which the adverse possession took place belongs to a nonprofit religious organization. We hold that a nonprofit religious organization's status as a "public benefit corporation" does not make it a "public entity" immune from adverse possession under Civil Code section 1007. We further hold that a nonprofit religious organization's "welfare exemption" from property taxes (see Rev. & Tax. Code, § 214) means that no such taxes were "levied and assessed" on the property during the years it qualified for the exemption. Under the plain and binding language of Code of Civil Procedure section 325, the adverse possessor is consequently excused from the usual requirement that he pay taxes on the disputed land for five years. (*Id.*, subd. (b).)

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## FACTS AND PROCEDURAL HISTORY

Larry Hagman or his trust (Hagman) owns a 30-acre parcel of land in Ojai, California. In 1987, one of the fences marking the boundary of his property was built in the wrong place. Since then, Hagman has been occupying and improving a 0.44-acre portion of the 173-acre parcel owned by his adjoining neighbor, the Meher Mount Corporation (Meher Mount).[1] Meher Mount is a religious group whose "primary purpose" is to "provide for the betterment of mankind by implementing the teachings of Meher Baba." The land it owns is irrevocably dedicated to that purpose.

Between 1999 and 2004, Meher Mount applied and qualified for a welfare exemption as a religious organization using its property for educational purposes. (See Rev. & Tax. Code, §§ 214, 271.) Accordingly, it did not pay Ventura County property taxes during those years. It did, however, pay the mosquito control and vector-borne disease prevention assessment (mosquito assessment) levied on its land, which amounted to $12.08 for all five years. Hagman did not pay any taxes or assessments on Meher Mount's property for those years.

In early 2011, Hagman sued Meher Mount to quiet title to the disputed half-acre on the theory that he had acquired title by adversely possessing that parcel between 1999 and 2004. Hagman moved for summary judgment. Meher Mount answered, opposed summary judgment and filed a cross-complaint for trespass and ejectment. In those filings, Meher Mount argued that (1) tax-exempt religious organizations are public entities immune from adverse possession under Civil Code section 1007, and (2) Hagman did not prove, as a prerequisite to adverse possession under Code of Civil Procedure section 325, that he paid either the yearly property taxes or the mosquito assessment on Meher Mount's land between 1999 and 2004.

The trial court granted summary judgment for Hagman. The court ruled that Civil Code section 1007 limits immunity from adverse possession to "public utilities" and "public entities." Meher Mount was neither. The court further noted that the only contested element of adverse possession was the requirement that Hagman pay all taxes levied and assessed on the property for the five years of alleged adverse possession.[2] (Code Civ. Proc., § 325, subd. (b).) The court accepted Hagman's argument that no property taxes had

---

[1] Although Hagman passed away during the pendency of this appeal, the property issues remain live.

[2] The undisputed facts established the other four elements of adverse possession: Hagman possessed the half-acre under a claim of right; his possession was open and notorious enough to give reasonable notice; it was hostile and exclusive; and it was continuous and uninterrupted for five years.

been assessed or levied on Meher Mount's property by virtue of its welfare exemption. Relying on *San Marcos Water Dist. v. San Marcos Unified School Dist.* (1986) 42 Cal.3d 154 [228 Cal.Rptr. 47, 720 P.2d 935] (*San Marcos Water Dist.*), superseded on other grounds by Government Code section 54999 et seq., the court further ruled that the mosquito assessment was not a "tax." The court reasoned that the assessment was levied to "clearly benefit specific real property" and not to raise "general revenue." Because it was not a tax, Hagman was not required to pay it under Code of Civil Procedure section 325.

## *DISCUSSION*

A party is entitled to summary judgment only if he proves there are no triable issues of material fact and that he is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) We review de novo a trial court's conclusion that a party has carried his burden. (*Winchester Mystery House, LLC v. Global Asylum, Inc.* (2012) 210 Cal.App.4th 579, 587 [148 Cal.Rptr.3d 412].)

### I. *Meher Mount's Property Is Not Immune from Adverse Possession*

In California, title to property owned by a public entity cannot be obtained by another through adverse possession.[3] (Civ. Code, § 1007; *Marin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861, 867 [127 Cal.Rptr.2d 113] (*Marin Healthcare Dist.*) [no adverse possession against state property]; *Hoadley v. San Francisco* (1875) 50 Cal. 265, 274–276 [same]; cf. *Guerra v. Packard* (1965) 236 Cal.App.2d 272, 287–288 [46 Cal.Rptr. 25] [adverse possession permissible against privately owned land].) Meher Mount offers arguments based on statutory language, policy, and precedent as to why a "public benefit corporation" like itself is a "public entity."

Meher Mount's statutory argument is a tidy syllogism: "Public benefit corporations" (Corp. Code, § 5060) are "public corporations" (Evid. Code, § 200), and "public corporations" are "public entities"; ergo, "public benefit corporations" must be "public entities." We reject this argument for two reasons.

First, public benefit corporations are not public corporations. The term "public corporation" is a term of art used to designate certain entities

---

[3] Civil Code section 1007 also reaches property owned by the state or "dedicated to a public use by a public utility." Meher Mount does not claim to be the state or a public utility.

that exercise governmental functions. (See Cal. Const., art. VI, § 9 [State Bar is a "public corporation."]; Bus. & Prof. Code, § 6001 [same]; *People v. San Joaquin etc. Assoc.* (1907) 151 Cal. 797, 799, 803–804 [91 P. 740] [district agricultural associations are "public corporations"]; Gov. Code, § 6300 [defining "public corporation" to include only governmental entities]; accord, *Bettencourt v. Industrial Acc. Com.* (1917) 175 Cal. 559, 561 [166 P. 323].) Our Legislature knows how to designate an entity as a "public corporation," and it has not so designated "public benefit corporations." That the terms "public corporation" and "public benefit corporation" happen to share two of the same words does not make them synonymous.

■ Second, public benefit corporations are not public entities. "Public entity" is not defined in Civil Code section 1007, but is defined elsewhere throughout the California codes. (E.g., Evid. Code, § 200; Gov. Code, § 811.2; Code Civ. Proc., §§ 481.200, 871.7, subd. (a), 1235.190; Health & Saf. Code, §§ 13050.1, 103660; Pub. Contract Code, §§ 1100, 5100, 7200, subd. (a)(2), 20671, subd. (b); Ins. Code, § 130, subd. (h); Pub. Resources Code, § 5800; Veh. Code, § 17000, subd. (c); Unemp. Ins. Code, § 135, subd. (a)(3); Wat. Code, § 371, subd. (e).) In every instance, the entities listed as public entities—from traditional bodies like counties and cities to more recent innovations like public authorities and public corporations—have one thing in common: Each is vested with some degree of sovereignty. (*Vallas v. City of Chula Vista* (1976) 56 Cal.App.3d 382, 387 [128 Cal.Rptr. 469], disapproved on other grounds in *Peterson v. Long Beach* (1979) 24 Cal.3d 238, 245, fn. 5 [155 Cal.Rptr. 360, 594 P.2d 477], superseded by Evid. Code, § 669 [so noting with Evid. Code, § 200]; *Lawson v. Superior Court* (2010) 180 Cal.App.4th 1372, 1396 [103 Cal.Rptr.3d 834] [so noting with Gov. Code, § 811.2].)

Public benefit corporations lack any element of sovereignty. They are not created by the government, even though they may require governmental approval to qualify as a public benefit corporation. They are not owned or operated by the government. They do not possess any of the traditional incidents of sovereign authority such as the power to tax or to condemn property. They do not serve a governmental purpose, although they may serve altruistic purposes that benefit society. (Accord, Code Civ. Proc., § 1235.155 [for condemnation purposes, distinguishing property owned by tax-exempt nonprofit organizations from property owned by public entities].)

■ Meher Mount's policy argument is also unpersuasive. Meher Mount argues that granting immunity from adverse possession to public benefit corporations makes good policy sense because they provide a valuable public service and should not have to fend off land-hungry encroachers. That may be so, but the Legislature could reasonably choose to recognize the contribution

of public benefit corporations by exempting them from property taxes while simultaneously conclude that they are more akin to private land owners than to governmental entities when it comes to immunity from adverse possession. Government property is immune from adverse possession "because there may be little incentive for a public entity to be aware of who is using public property or take steps to interfere with a potential adverse possessor. [Citation.]" (*Hays v. Vanek* (1989) 217 Cal.App.3d 271, 286 [266 Cal.Rptr. 856].) Public benefit corporations ostensibly have different incentives. They include a diverse array of organizations from religious schools to cemeteries to water cooperatives; such entities have a far greater incentive than cities or counties to police their own property for trespassers and to take action to eject them. Because, "as a court, we must defer to the Legislature's judgment on which . . . policies to adopt" (*Marin Healthcare Dist., supra*, 103 Cal.App.4th at p. 872), Meher Mount's request that we strike a different balance among these competing policy considerations is better addressed to the Legislature than to us.

Meher Mount lastly contends that *Mosk v. Summerland Spiritualist Assn.* (1964) 225 Cal.App.2d 376 [37 Cal.Rptr. 366] requires us to rule in its favor. In *Mosk*, the plaintiff sought to adversely possess land owned by a religious trust. The court held that the plaintiff had failed to prove his entitlement to adverse possession, but made the following observation: "It seems to us that property held under a charitable trust would have the same immunity" to adverse possession as the government. (*Id.*, at p. 381.) Tellingly, no court has cited *Mosk* for its observation in the intervening 49 years. We go further, and express our view that *Mosk*'s observation is incorrect. *Mosk* contained no statutory analysis. Instead, it reasoned that charitable trusts are imbued with a "public" character because, at that time, only the Attorney General could enforce such trusts. (*Ibid.*) That premise is no longer valid, as the Attorney General's authority is no longer exclusive. (See Prob. Code, § 24, subd. (d) [trust beneficiaries have standing]; Gov. Code, § 12598, subd. (a) [Attorney General also has authority over charitable trusts and public benefit corporations]; Corp. Code, § 9230 [Attorney General has fewer powers over "religious corporations"].) More to the point, nothing in *Mosk* undermines our analysis of Civil Code section 1007's text or policy. We decline to follow *Mosk*.

Accordingly, we conclude that Meher Mount is not a public entity immune from adverse possession.

II. *Hagman Need Not Pay Property Taxes Never Levied and Assessed*

■ To obtain title, an adverse possessor is required to prove that he or she "timely paid all state, county, or municipal taxes that have been levied

and assessed upon the land for [a] period of five years . . . ." (Code Civ. Proc., § 325, subd. (b); see *Gilardi v. Hallam* (1981) 30 Cal.3d 317, 326 [178 Cal.Rptr. 624, 636 P.2d 588] *(Gilardi)*; *Glatts v. Henson* (1948) 31 Cal.2d 368, 372 [188 P.2d 745]; *Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1054 [124 Cal.Rptr.3d 170] [applying requirement to separately assessed prescriptive easements].) Meher Mount argues that Hagman has failed to comply with this requirement for two reasons: (1) he never paid the property taxes on the disputed half-acre, and (2) he never paid the mosquito assessments. Hagman admits he paid no taxes, but responds that (1) no property taxes were ever levied or assessed on the property due to Meher Mount's tax-exempt status, and (2) the mosquito assessment is not a tax. The meaning of the terms "levy," "assess," and "tax" are all issues of law we review de novo. *(Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, 873–874 [64 Cal.Rptr.2d 447, 937 P.2d 1350] *(Sinclair Paint Co.)*; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

A.  *Property Taxes Were Not Assessed or Levied on Meher Mount's Property*

■ Because Code of Civil Procedure section 325 does not use its own definition for when taxes have been "levied" and "assessed," we look to the general definitions. (See *Allen v. McKay & Co.* (1898) 120 Cal. 332, 334 [52 P. 828].) A tax is assessed when the county assessor prepares the roll listing all properties subject to taxation and their assessed value. (Rev. & Tax. Code, §§ 401, 109, 601.) This occurs annually. *(Id.,* § 405, subd. (a).) A tax is levied when the county's board of supervisors fixes the tax rate and orders that the taxes be paid "in specific sums in terms of the rates so adopted." (Gov. Code, § 29101; see *id.,* § 29100.)

For each tax year pertinent in this case, Meher Mount applied and qualified for the welfare exemption on that property. (See Rev. & Tax. Code, § 214.) Once these exemptions were granted, the property became "exempt from taxation." *(Id.,* § 214, subd. (a).) The question then becomes: Does the grant of the welfare exemption from property taxes preclude a county from assessing and levying taxes on the exempt property? As discussed below, the exemption precludes both assessment and levy.

■ The grant of the welfare exemption precludes the assessment of property taxes. Assessment requires both valuation of the property and its placement on the roll. Meher Mount notes that property will often be valued before a welfare exemption is granted. This is true, but valuation is only the first portion of assessment. Under the statutorily prescribed deadlines, exemption applications are due before property is placed on the roll. (Rev. & Tax.

Code, §§ 254.5 [exemption applications due Feb. 15], 616, 617 [certified assessor's roll due to auditor on July 1].) This ensures that property qualifying for the welfare exemption—whether or not already valued—is not placed on the roll and consequently not assessed any property tax. However, even if property is placed on the roll, a subsequently granted exemption voids any prior assessment of property tax on that land. (*Id.*, §§ 271, subd. (a)(1), 272 [requiring assessor's roll to be corrected if welfare exemption is approved after roll is completed], 201 [exempt property not "subject to taxation"]; *Hollister v. Sherman* (1883) 63 Cal. 38, 39 [attempts to assess exempt property are void].)

The welfare exemption also precludes any levy of property taxes. Levy presupposes assessment. If, due to the exemption, no tax is assessed, there can be no subsequent levy. Even if a tax is levied, the levy is canceled by a later-granted exemption. (See *Mountain Club v. Pinney* (1924) 67 Cal.App. 225, 248–249 [227 P. 630] [holding that adverse possessor need not pay later canceled tax].)

Meher Mount argues that excusing Hagman from the statutory duty to pay property taxes on the disputed parcel, just because Meher Mount is excused, is bad public policy. Meher Mount posits that the exemption is meant to benefit the public-minded property owner, and should therefore apply only to the owner and not the adverse possessor. Meher Mount also anticipates that our rule will make it easier to adversely possess the land of tax-exempt organizations. Be that as it may, these are policy arguments we are not free to follow when faced with statutes that dictate a different result.

■  We therefore conclude that no property taxes were assessed or levied on Meher Mount's property during the years it qualified for the welfare exemption. Hagman is accordingly not required to pay property taxes on that land under Code of Civil Procedure section 325, subdivision (b).[4] (See *Allen v. Allen* (1911) 159 Cal. 197, 200 [113 P. 160] [if no taxes are levied or assessed, adverse possessor need not pay taxes].)

B.  *The Mosquito Assessment Is Not a "Tax"*

■  In determining whether the mosquito assessment is a tax, we start with the generic definition. "[T]axes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. [Citations.]" (*Sinclair Paint Co., supra,* 15 Cal.4th at p. 874; see *San Marcos Water Dist., supra,* 42 Cal.3d at p. 162; *Pajaro Valley Water Management Agency v.*

---

[4] In light of our ruling, we need not reach Hagman's further argument that he already paid the property taxes on the disputed half-acre because he openly improved that land. (See *Gilardi, supra,* 30 Cal.3d at p. 327.)

*Amrhein* (2007) 150 Cal.App.4th 1364, 1381 [59 Cal.Rptr.3d 484].) To be sure, the Legislature and voters have adopted different definitions of "tax" tailored to specific purposes. (*Sinclair Paint Co., supra*, at p. 874 [the term "tax" has "no fixed meaning"]; see *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 421 [9 Cal.Rptr.3d 121, 83 P.3d 518] (*Richmond*) [defining "tax" vis-à-vis "assessment" in determining voter enactment requirements]; *San Marcos Water Dist., supra*, at pp. 160–162 [defining taxable "fee" vis-à-vis exempt "special assessment" for purposes of public entity's exemption from taxes]; *United Business Com. v. City of San Diego* (1979) 91 Cal.App.3d 156, 165 [154 Cal.Rptr. 263] [defining "tax" vis-à-vis "fee" for purposes of determining municipality's power to levy tax].)

There is no policy-driven reason to depart from this generic definition when defining the term "taxes" under Code of Civil Procedure section 325 because the policy served by the taxation requirement in this context is a relatively weak one. An adverse possessor is required to pay taxes to put the record owner on notice of the adverse possessor's interest in the property. Notice is surely important, but the notice imparted by the payment of taxes is "entirely insignificant" when compared to notice imparted by the adverse possessor's open and notorious possession of the land itself. (*Cavanaugh v. Jackson* (1893) 99 Cal. 672, 674 [34 P. 509].) The notice arising from payment of taxes borders on trivial in this case, where the assessment ranged from $1.12 to $7.60 per year.

██ The mosquito assessment is not a tax under the generic definition. The assessment does not raise general revenues for the county or any other public entity. To the contrary, the environmental health division that administers this program is limited to monitoring, abating and preventing mosquitos (Gov. Code, § 53750, subd. (*l*)), and may only seek assessments for this program if its revenues are not enough to meet the costs of providing these services (Health & Saf. Code, §§ 2080, 2082, subd. (a)). We therefore agree with the trial court that the mosquito assessment is not a tax. Hagman was not required to pay it in order to perfect his claim of adverse possession.

Meher Mount contends that the mosquito assessment is not an "assessment" under California Constitution, article XIII D, section 2, subdivision (b),[5] and is instead a "special tax" under article XIII C, section 1, subdivision (d); as such, it is a tax. These constitutional provisions do not use the generic definition we have adopted. Accordingly, how the mosquito assessment is classified under their rubric is irrelevant. (*Richmond, supra*, 32 Cal.4th at p. 422.)

We decline to consider Meher Mount's further challenge to the enactment of the mosquito assessment under article XIII D, section 4. As an initial

---

[5] All further references to articles are to the California Constitution.

matter, this challenge comes eight years too late. (Code Civ. Proc., § 329.5 [challenges to validity of assessments must be brought within 30 days of levy]; *Barratt American, Inc. v. City of San Diego* (2004) 117 Cal.App.4th 809, 812 [12 Cal.Rptr.3d 132] [applying Code Civ. Proc., § 329.5 to art. XIII D].) More to the point, our resolution of this argument will have no impact on the outcome of this case. If we conclude that the mosquito assessment is an "assessment" within the meaning of article XIII D, section 2, subdivision (b), it is by Meher Mount's reasoning *not* a "tax," and Hagman was not obligated to pay it. On the other hand, if we conclude that the mosquito assessment was actually a "special tax" that was not enacted under the more onerous enactment procedures of article XIII C, section 2, subdivision (d), the assessment is void and hence no longer "levied." Hagman would accordingly not be required to pay it. Either way, Hagman would not be required to pay the mosquito assessment.

## DISPOSITION

The judgment quieting title to Hagman is affirmed. Costs on appeal are awarded to Hagman.

Gilbert, P. J., and Yegan, J., concurred.