Filed 12/2/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANDREW BLACK, | B339694 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV36213) |
| v. | |
| LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge. Affirmed in part and reversed in part.

Law Offices of William B. Hanley and William B. Hanley for Plaintiff and Appellant.

Peterson, Bradford, Burkwitz, Gregorio, Burkwitz, & Su and Avi Burkwitz for Defendants and Respondents.

_____

Plaintiff Andrew Black appeals from the judgment after the trial court sustained a demurrer in favor of defendants Los Angeles County Metropolitan Transportation Authority (MTA) and Public Transportation Services Corporation (PTSC). The trial court found plaintiff had failed to allege he had complied with the Government Claims Act (Gov. Code, § 810 et. seq.; GCA), which requires plaintiffs to provide written claims for damages to public entities before filing suit against those entities.

On appeal, plaintiff does not challenge the judgment in favor of MTA. As to PTSC, plaintiff argues: 1) PTSC is not a public entity entitled to a prelitigation claim under the GCA; and 2) assuming PTSC is a public entity, plaintiff is excused from the GCA's claims presentation requirement because PTSC did not register on the Registry of Public Agencies.

We disagree with plaintiff that PTSC is not a public entity for purposes of the GCA's claims presentation requirement. MTA created PTSC, a nonprofit public benefit corporation, to provide retirement benefits to workers who otherwise would be ineligible for those benefits if employed directly by MTA. PTSC thus manages and supplies the workers who carry out MTA's mission, and its powers are limited to those MTA authorizes. Under applicable case law, the circumstances of PTSC's creation and its relationship with MTA establish PTSC's public entity status.

We agree with plaintiff, however, that PTSC's alleged failure to register on the Registry of Public Agencies would excuse plaintiff's noncompliance with the GCA. Although defendants have provided evidence PTSC is on the registry maintained by the Secretary of State, they have yet to

2

demonstrate PTSC also has registered with the clerks of each county in which PTSC maintains an office, as is required by statute. Plaintiff therefore is entitled to amend his complaint to allege PTSC's failure to register.

Accordingly, we affirm the judgment in favor of MTA, and reverse the judgment in favor of PTSC.

## BACKGROUND

Plaintiff filed a complaint against defendants alleging wrongful termination in violation of public policy and violation of Labor Code section 970. After answering the complaint, defendants filed a motion for judgment on the pleadings asserting that plaintiff had failed to plead compliance with the claims presentation requirements of the GCA. Defendants argued that requirement applies because MTA is a "public entity created pursuant to the County Transportation Commissions Act," and PTSC is both "a public corporation" and "a public agency." Alternatively, defendants argued as public entities, they are immune from common law liability for wrongful termination in violation of public policy and also immune from causes of action for misrepresentation under Labor Code section 970.

In his opposition, plaintiff conceded MTA is a public entity, but argued PTSC, as a nonprofit public benefit corporation, is distinct from a "public corporation" and therefore not protected by the GCA.

The trial court granted the motion. The court agreed plaintiff had not pleaded facts addressing the claims presentation requirement, and indeed "apparently concede[d] he ha[d] not filed a claim" under the GCA. The court found plaintiff also had conceded MTA is a public entity. The court further found PTSC is a "local public entity under the [GCA]" as "either a 'public

3

corporation' or 'public agency.' " The court granted plaintiff leave to amend. The court did not address defendants' alternative arguments that as public entities, they are immune from plaintiff's causes of action.

Plaintiff then filed his first amended complaint (FAC). The FAC now asserted causes of action for wrongful termination and Labor Code violations against PTSC only, alleging PTSC is not a public entity and therefore the GCA is inapplicable to PTSC. The FAC also added a new cause of action for breach of contract against both defendants, with no allegations concerning the GCA.

Defendants filed a demurrer, again arguing plaintiff had not pleaded compliance with the GCA, MTA is a governmental entity, and as both a public agency and a public corporation, PTSC is entitled to the protections of the GCA. Defendants reasserted their alternative argument that as public entities they are immune from plaintiff's wrongful termination and Labor Code section 970 causes of action. Defendants also filed a motion to strike the new breach of contract cause of action, which defendants contended was not within the scope of the trial court's order permitting amendment.

Plaintiff opposed the demurrer, arguing as he had before that PTSC is not a public entity. He also argued, assuming arguendo PTSC were a public entity, he was nonetheless excused under Government Code section 946.4 from the claims presentation requirement because "[t]here is no evidence [o]f PTSC being listed on the Registry of Public Agencies" as required by Government Code section 53051.

Plaintiff also opposed the motion to strike, arguing his amendments were within the scope of the trial court's prior order.

4

In reply, defendants argued, inter alia, that plaintiff's assertions concerning Government Code sections 946.4 and 53051 were procedurally improper for having been raised for the first time in opposition to the demurrer rather than in the FAC. Defendants further argued PTSC is an "organizational unit" of MTA, and "a subdivision need not comply with" the registration requirement of Government Code section 53051.

The trial court sustained the demurrer without leave to amend. Citing its earlier ruling on the motion for judgment on the pleadings, the court again found "each Defendant is a public entity subject to the claim presentation requirements." Quoting the MTA's administrative code, the court found PTSC, " '[w]hen serving as an organizational unit of the MTA, . . . is subject to all governmental privileges and immunities enjoyed by the MTA . . .' [Citation.]" Accordingly, the court found, "Plaintiff has provided no authority requiring PTSC to register separately" under Government Code section 53051. Even if PTSC were required to register, "Plaintiff did not allege facts to support this contention in his FAC, and instead, only raised it for the first time in his opposition." The court did not address defendants' alternative argument regarding public entity immunity from wrongful termination and Labor Code section 970 causes of action. The court ruled the motion to strike was moot.

The trial court entered judgment in favor of defendants. Plaintiff timely appealed.

In responding to supplemental briefing we requested, defendants asked us to take judicial notice of a "Statement of Facts" for the "Roster of Public Agencies" submitted on behalf of PTSC to the Secretary of State on August 3, 2000, as well as a letter from the Secretary of State confirming filing of the

5

statement of facts as of August 7, 2000.  We take judicial notice of these documents, noting plaintiff's objection to the request.[1] (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

## STANDARD OF REVIEW

" ' "We independently review [a] ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action."  [Citation.]  "[W]e accept as true the well-pleaded allegations in [the] . . . complaint.  ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]" ' "  [Citation.]  " 'We are not bound by the trial court's reasoning and may affirm the judgment if correct on any theory.' "  [Citation.]' [Citation.]"  (*One Technologies, LLC v. Franchise Tax Bd.* (2023) 96 Cal.App.5th 748, 759 (*One Technologies*).)

"We review the trial court's decision not to grant leave to amend for abuse of discretion.  [Citation.]  ' "[W]e must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.  [Citation.]  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  [Citation.]  The plaintiff has the burden of proving that an amendment would cure the defect."  [Citations.]' [Citation.]"  (*One Technologies*, *supra*, 96 Cal.App.5th at p. 759.)

---

[1] We deny as moot defendants' request to take judicial notice of PTSC's articles of incorporation, because they already are in the record on appeal, but grant their request to take judicial notice of MTA's resolution to establish PTSC.  (Evid. Code, §§ 452, subd. (b), 459, subd. (a).)

6

A plaintiff may assert a basis to amend for the first time on appeal. (See *Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 992 (*Heshejin*).)

## DISCUSSION

"As a general rule, a plaintiff must present a public entity with a timely written claim for damages before filing suit against it." (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 652; see Gov. Code,[2] § 945.4.) "If a complaint does not allege facts showing that a claim was timely made, or that compliance with the claims statutes is excused, it is subject to demurrer." (*J.M.*, at p. 652.)

On appeal, plaintiff does not dispute he did not submit a written claim to either MTA or PTSC before filing suit. He also does not dispute that MTA is a public entity subject to the claims presentation requirement. Accordingly, plaintiff does not challenge the trial court's sustaining of the demurrer in favor of MTA.

Plaintiff does challenge the sustaining of the demurrer in favor of PTSC. As he did below, he raises two alternative arguments. First, he argues PTSC is not a public entity to which the claims presentation requirement applies. Second, he argues to the extent PTSC is a public entity, plaintiff is excused from the claims presentation requirement because PTSC has not demonstrated it has complied with its obligation to register on the Registry of Public Agencies.

As set forth below, we conclude PTSC is a public entity for purposes of the GCA's claims presentation requirement. Because

---

[2] Unspecified statutory citations are to the Government Code.

7

plaintiff did not allege compliance with or excuse from the claims presentation requirement, his complaint was subject to demurrer. Plaintiff, however, may amend his complaint to allege PTSC has not fully complied with the registration requirement, thus excusing him from the claims presentation requirement.

## A.     Background on PTSC

We begin with background on PTSC's formation and its relationship with MTA, as well as an appellate decision, *Silver v. Los Angeles County Metropolitan Transportation Authority* (2000) 79 Cal.App.4th 338, 342 (*Silver*), that held PTSC is a public entity entitled to contract with the California Public Employees' Retirement System (PERS).

### 1.     *Formation of PTSC*

The Legislature formed MTA in 1992 by merging the Southern California Rapid Transit District (RTD) with the Los Angeles County Transportation Commission (LACTC). (*Silver*, *supra*, 79 Cal.App.4th at p. 342.)  The Legislature granted MTA authority to "determine its organizational structure, which may include, but is not limited to, the establishment of departments, divisions, subsidiary units, or similar entities," which the Legislature referred to as " 'organizational unit[s].' "  (Pub. Util. Code, § 130051.11, subd. (a).)  The Legislature further authorized the MTA to "administratively delegate to an organizational unit . . . any powers and duties it deems appropriate."  (*Id.*, subd. (f).)

Before MTA's formation, RTD employees participated in Social Security, whereas LACTC employees participated in PERS.  (*Silver*, *supra*, 79 Cal.App.4th at pp. 342–343.)  In an effort "to provide a unified and cost-effective retirement plan for

8

its employees," MTA "reached an understanding . . . with PERS, the Social Security Administration . . . , and the [Internal Revenue Service] that would have allowed all MTA employees an individual election to opt out of Social Security and enroll in PERS." (*Silver*, *supra*, 79 Cal.App.4th at p. 343.) The employees' unions resisted this plan, however, and "[a]s a result, the MTA was unable to enter into a contract with PERS." (*Id.* at pp. 343–344.) Further, "PERS advised the MTA that the former LACTC employees would not be permitted to remain in PERS permanently unless substantially all of the MTA's workforce was also eligible to participate in PERS." (*Id.* at p. 344.)

To resolve these dilemmas, MTA "decided to create a new entity, the PTSC, to provide uninterrupted coverage to its employees who participated in PERS as well as to provide its other employees with the opportunity to obtain PERS retirement benefits." (*Silver*, *supra*, 79 Cal.App.4th at p. 344.) MTA's board thus formed PTSC, "a governmental nonprofit public benefit corporation," in 1996. (*Ibid.*) PTSC entered into a contract with PERS to provide retirement benefits to employees transferred from MTA to PTSC. (*Ibid.*) "Those employees were given the option to elect among various retirement plans, and no MTA employee was transferred to the PTSC or required to join PERS or lose Social Security against his or her will." (*Ibid.*) In August 1997, "about 2,000 MTA employees were transferred to the employ of the PTSC on a voluntary basis." (*Id.* at p. 345.)

Chapter 2-30 of MTA's administrative code, enacted by MTA's board of directors, pertains to PTSC. Paragraph 2-30-010 states MTA formed PTSC "as a nonprofit public benefit corporation to perform public transportation functions in coordination with and support of the MTA."

9

Paragraph 2-30-020 of the administrative code provides, "The authority and responsibilities of the PTSC are as set forth in its articles of incorporation and bylaws and are limited to those assigned by the MTA as necessary to further public transportation services and projects with the County of Los Angeles. The principal specific responsibilities of the PTSC are: [¶] A. To provide the MTA with a mechanism for achieving financial savings in personnel and insurance costs; [¶] B. To provide a means of achieving insurance premium tax savings through the creation of a joint powers authority with the MTA; [¶] C. To provide a mechanism through which former Los Angeles County Transportation Commission employees and certain other employees providing services to the MTA can obtain retirement benefits through the Public Employees Retirement System; [¶] D. To provide a mechanism through which employment tax savings can be achieved through non-election of Social Security Coverage; and [¶] E. To conduct other essential and helpful regional public transportation activities, including planning, programming, administrative, operational management, construction and security functions as may be required in furtherance of the mission and purpose of the MTA."

Paragraph 2-30-030 of the administrative code is entitled "Relationship of PTSC and MTA." It provides, "As a corporation the PTSC has legal status distinct from the MTA, but by contract the PTSC functions solely as an organizational unit of the MTA. When serving as an organizational unit of the MTA, the PTSC is subject to all governmental privileges and immunities enjoyed by the MTA. Except with regard to retirement benefits and employment taxes, the employees of the PTSC are subject to all the privileges, immunities and responsibilities that would apply

if they were employed by the MTA.  Unless the text otherwise provides, any reference in any rule, policy, resolution or ordinance to MTA employees shall be considered to also refer to employees of the PTSC."

### 2.    Silver

In *Silver*, former RTD employees now employed by the MTA, as well as two unions, petitioned for a writ of mandate challenging, inter alia, PTSC's entitlement to participate in PERS.  (*Supra*, 79 Cal.App.4th at pp. 345–346; see *id.* at pp. 342, 345, fn. 3 [identifying petitioners].)  The petitioners pleaded that PTSC "was not an independent and autonomous public agency . . . and thus did not qualify for participation in PERS." (*Id.* at pp. 345–346.)  Petitioners sought a declaration from the court that "PTSC is a sham corporation and an organizational unit of the MTA . . . and not a public agency within the meaning of the [statutes governing PERS]."  (*Id.* at p. 346.)  Petitioners further "sought an order directing PERS to cease and desist from honoring any contract for coverage under PERS of PTSC as a public agency and to refund to the MTA all contributions made by MTA/PTSC."  (*Ibid.*)

The trial court denied the writ petition and the Court of Appeal affirmed.  (*Silver, supra*, 79 Cal.App.4th at pp. 347, 358.)  The reviewing court found substantial evidence to support the trial court's finding that " 'PTSC was formed for the proper purpose of making PERS retirement benefits available to its employees and for other proper business purposes, including providing transportation and planning services to other governmental entities.' "  (*Id.* at pp. 352–353.)  The Court of Appeal noted, inter alia, "PTSC does not exist merely as an extension of the MTA.  Apart from the MTA, PTSC also has

11

contracted with the [Southern California Regional Rail Authority] to provide professional and administrative services to it." (*Id.* at p. 354.) The court rejected the petitioners' argument that PTSC's employees "are in fact employees of the MTA," because PTSC "was created for a proper purpose" and "is a discrete entity." (*Ibid.*)

The Court of Appeal also rejected the argument "that because PTSC is an organizational unit of the MTA, PTSC is not a separate and autonomous agency within the meaning of the [statutes governing PERS]." (*Silver*, *supra*, 79 Cal.App.4th at p. 356.) The court found persuasive PERS' own analysis concluding PTSC was eligible for PERS coverage. (*Ibid.* ["Because PERS is authorized to contract with public agencies for inclusion of their employees in the state public employees' retirement system (Gov. Code, § 20460), PERS by necessity is called upon to determine whether an entity is a public agency within the meaning of the statutory scheme."].) PERS found PTSC's membership was "confined to public agencies," and "PTSC had a sufficient degree of autonomy from the MTA because PTSC was created under California statute and had its own board of directors, which board had various powers, including: the power to select and remove all the officers of the corporation, to borrow money and incur indebtedness for the purpose of the corporation, to appoint committees, and to enter into contracts." (*Ibid.*) The court concluded, "PTSC is a public agency entitled to contract with PERS." (*Id.* at p. 357.)

## B.  PTSC Is a Public Entity for Purposes of the GCA's Claims Presentation Requirement

Plaintiff alleged in the FAC, and argues on appeal, PTSC is a nonprofit public benefit corporation, which he contends does not

12

qualify as a public entity subject to the GCA's claims presentation requirement. Defendants argue the GCA's claims presentation requirement applies to PTSC because it is a "local public entity," which under section 900.4, "includes a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State, but does not include the State." (See § 905 [claims presentation requirement applies to claims against local public entities].) Defendants argue PTSC is a "public agency" and a "public corporation," and the trial court so found.[3]

As an initial matter, plaintiff argues *Silver* is not determinative because that case pertained to public entity status for PERS eligibility, not the GCA. It is true the definition of "public agency" for PERS eligibility differs from that in the GCA. *Silver* concluded PTSC was eligible to contract with PERS under section 20057, subdivision (e), which defines " 'public agency' " to include "[a]ny nonprofit corporation whose membership is

_____

[3] In addition to the definition of "local public entity" under section 900.4, the GCA defines " 'Public entity' " as "the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." (§ 811.2.) Because both definitions include public agencies and public corporations, it does not matter if PTSC is deemed a public entity under section 811.2 or a local public entity under section 900.4 for the purpose of determining whether the GCA's claims presentation requirement applies.

13

confined to public agencies as defined in Section 20056."[4] (*Silver*, *supra*, 79 Cal.App.4th at pp. 355–356.)

We will assume arguendo that an entity eligible for PERS under section 20057, subdivision (e) is not necessarily also a public entity under the GCA. Even so, we conclude defendants have established, as a matter of law, that PTSC is a public entity for purposes of the GCA's claims presentation requirement.

The GCA does not further define "local public entity," "public agency," or "public corporation." Case law in other contexts illustrates that determining public entity status requires case-specific analysis. (See *Hagman v. Meher Mount Corp.* (2013) 215 Cal.App.4th 82, 88 (*Hagman*) [looking to case law defining "public entity" under other statutory schemes when statute at issue provided no definition].) Instructive are two recent cases, *Stone v. Alameda Health System* (2024) 16 Cal.5th 1040 (*Stone*) and *Allen v. San Diego Convention Center Corp., Inc.* (2022) 86 Cal.App.5th 589 (*Allen*).

In *Stone*, our Supreme Court addressed "whether a hospital authority created by a county board of supervisors and authorized by the Legislature to manage the county's public health facilities" was liable for wage and hour violations and civil penalties under the Labor Code. (*Supra*, 16 Cal.5th at p. 1049.) After concluding "public employers" are exempt from Labor Code provisions concerning meal and rest break violations, the Supreme Court concluded the hospital authority, Alameda Health System (AHS), is a public entity entitled to that exemption. (*Id.* at pp. 1049, 1068.)

---

[4] Section 20056 defines " 'Public agency' " as "any city, county, district, other local authority or public body of or within this state."

14

In reaching this conclusion, the high court first looked to the statute enabling the creation of AHS, Health and Safety Code section 101850. (*Stone*, *supra*, 16 Cal.5th at p. 1061.) The court observed the statute "repeatedly describes AHS as a 'public agency.'" (*Ibid.*) The court further noted AHS, as a "public hospital authority, and a public agency under the enabling statute's terms," fell within the definition of "[p]ublic entity" under the Health and Safety Code, which included "public authority" and "public agency." (*Stone*, at pp. 1061–1062, citing Health & Saf. Code, § 13050.1.) The enabling statute also contained provisions "address[ing] AHS's rights and liabilities under laws that specifically apply to public entities," including the GCA. (*Stone*, at p. 1062.)

The court then described how, under the enabling statute, "AHS's affairs are intertwined with, and dependent upon, Alameda County." (*Stone*, *supra*, 16 Cal.5th at p. 1063.) Under the statute, the county's board of supervisors was responsible for appointing AHS's governing board and adopting and amending its bylaws. (*Ibid.*) The county retained control over the hospital's physical plant and facilities. (*Ibid.*) AHS employees were eligible to participate in the county's retirement system, with some exceptions. (*Ibid.*) AHS was authorized to borrow money from the county. (*Ibid.*) AHS was required to provide the county with quarterly reports on patient care and the board of supervisors had authority to dissolve AHS. (*Ibid.*) "AHS can[not] be understood to be a private institution when it was created by a county board of supervisors, pursuant to necessary authorization from the state Legislature, and upon terms requiring the county's ongoing involvement in AHS's board membership, bylaws, licensure, and finances." (*Id.* at p. 1067.)

15

*Allen* held the San Diego Convention Center Corporation (SDCCC) is a public entity exempt from Labor Code violations asserted by the plaintiff. (*Supra*, 86 Cal.App.5th at p. 597.) SDCCC is a nonprofit public benefit corporation "wholly owned by the city of San Diego" that operates the city's convention center. (*United National Maintenance, Inc. v. San Diego Convention Center, Inc.* (9th Cir. 2014) 766 F.3d 1002, 1005 (*United*).) *Allen* relied on *United*, a federal case, which held SDCCC is a public entity entitled to immunity from antitrust liability under the federal Sherman Act (15 U.S.C. § 1 et seq.). (*Allen*, at pp. 598–599.)

*Allen* noted *United*'s observation that " 'San Diego's municipal code . . . defines the city itself as including SDC[CC],' and that SDCCC's 'relationship with San Diego also shows that [it] acts as the instrument of San Diego: (1) San Diego appoints all of SDC[CC]'s board members, (2) upon dissolution, SDC[CC]'s assets revert back to San Diego; (3) SDC[CC] must publicly account for its operations. Overall, SDC[CC] acts as an agent that operates the convention center for the benefit of its principal, the city of San Diego.' [Citation.]" (*Allen*, *supra*, 86 Cal.App.5th at p. 599, quoting *United*, *supra*, 766 F.3d at p. 1011.) *United* further observed the California law " 'granted cities the statutory authority to construct public assembly or convention halls' " and appoint commissions to manage the facilities, and any funds from those halls after expenses go to the city's general fund. (*Allen*, at p. 599, quoting *United*, at p. 1005.)

The *Allen* court concluded, "[T]hese undisputed facts establish as a matter of law that [SDCCC] is a public entity, which is not subject to the Labor Code provisions [the plaintiff] alleges it violated." (*Allen*, *supra*, 86 Cal.App.5th at p. 599.)

16

"The SDCCC was formed under the authority of state law, operates solely for the benefit of the municipality, and is defined by the City of San Diego's municipal code as part of the city." (*Id.* at p. 600.)

PTSC is sufficiently analogous to AHS and SDCCC for us to conclude it is a public entity. Like AHS and SDCCC, PTSC was created by a governmental entity, MTA. Also like AHS and SDCCC, PTSC's creation was pursuant to statute, in this case Public Utilities Code section 130051.11, which authorizes MTA to create organizational units, including "subsidiary units," and "delegate . . . any powers and duties it deems appropriate." (*Id.*, subds. (a), (f).) Just as the board of supervisors in *Stone* and the city council in *Allen* exercised significant control over the entities at issue, MTA's administrative code defines PTSC as an organizational unit of MTA, and limits PTSC's "authority and responsibilities" "to those assigned by the MTA as necessary to further public transportation services and projects." (MTA Admin. Code, §§ 2-30-020, 2-30-030.) Like SDCCC, PTSC " 'acts as the instrument' " of MTA (*Allen*, *supra*, 86 Cal.App.5th at p. 599) by supplying and managing the workers who carry out MTA's mission.

In support of his contention that PTSC, as a nonprofit public benefit corporation, is not a public entity, plaintiff cites *Hagman*, *supra*, 215 Cal.App.4th 82. In *Hagman*, a nonprofit religious organization argued that because it was a "public benefit corporation" under Corporations Code section 5060, it was a "public entity" immune from adverse possession under Civil Code section 1007. (*Hagman*, at pp. 85, 87.)

The Court of Appeal disagreed. The court first concluded, "[P]ublic benefit corporations are not public corporations," the

17

latter being "a term of art used to designate certain entities that exercise governmental functions," such as the State Bar and district agricultural associations. (*Hagman*, *supra*, 215 Cal.App.4th at pp. 87–88.) "That the terms 'public corporation' and 'public benefit corporation' happen to share two of the same words does not make them synonymous." (*Id.* at p. 88.)

The court further concluded, "[P]ublic benefit corporations are not public entities." (*Hagman*, *supra*, 215 Cal.App.4th at p. 88.) Because "public entity" is not defined for purposes of Civil Code section 1007, the court looked to other statutory schemes and concluded, "In every instance, the entities listed as public entities—from traditional bodies like counties and cities to more recent innovations like public authorities and public corporations—have one thing in common: Each is vested with some degree of sovereignty." (*Hagman*, at p. 88.) "Public benefit corporations lack any element of sovereignty. They are not created by the government, even though they may require governmental approval to qualify as a public benefit corporation. They are not owned or operated by the government. They do not possess any of the traditional incidents of sovereign authority such as the power to tax or to condemn property. They do not serve a governmental purpose, although they may serve altruistic purposes that benefit society." (*Ibid.*)

Plaintiff appears to read *Hagman* to hold that a nonprofit public benefit corporation *cannot* be a public entity. Not so. *Hagman* establishes an entity's status as a nonprofit public benefit corporation does not, by itself, grant it "public entity" status. This does not mean a nonprofit public benefit corporation cannot be a public entity if its attributes resemble those of a

18

public entity. *Hagman* discussed nonprofit public benefit corporations that are "not created by the government," or "owned or operated by the government," and that "do not serve a governmental purpose." (*Hagman*, at p. 88.) *Hagman* did not confront the circumstances of the instant case, in which the nonprofit public benefit corporation at issue, PTSC, was 1) created by a government entity that dictates its authority and responsibilities, and 2) serves a governmental purpose. Indeed, these qualities are among the "element[s] of sovereignty" *Hagman* attributes to public entities. (*Id.* at p. 88.)

We further note case law does not support plaintiff's contention that a nonprofit public benefit corporation can never be a public entity. As discussed, SDCCC is a nonprofit public benefit corporation (*United*, *supra*, 766 F.3d at p. 1005), and *Allen* concluded it is also a public entity.

Plaintiff argues PTSC and other nonprofit public benefit corporations cannot be public entities because "[t]hey do not possess traditional incidents of sovereign authority such as the power to tax or condemn property." On the record before us, we do not know whether PTSC has any powers to tax or condemn property. We observe the Legislature has authorized MTA to delegate to its organizational units "[t]he power of eminent domain." (Pub. Util. Code, § 130051.11, subd. (f)(1).) We will assume arguendo, however, that plaintiff accurately asserts that PTSC lacks the power to tax or condemn property.

We conclude an entity can qualify as a public entity for purposes of the GCA despite not having the powers of taxation or eminent domain. In *Stone*, the plaintiffs similarly argued AHS could not be considered a "public entity exempt from Labor Code requirements" because it lacked "the same sovereign powers as a

19

city or county." (*Stone, supra*, 16 Cal.5th at p. 1067.) The court rejected the "broad assertion that only entities with the same sovereign powers as a division of government, such as taxing or eminent domain authority, are exempt from Labor Code requirements." (*Id.* at p. 1068.) The court further rejected plaintiff's comparison of AHS to a charter school operator held not to be a public entity in *Gateway Community Charters v. Spiess* (2017) 9 Cal.App.5th 499 (*Gateway*) (abrogated by *Stone*) precisely because "[m]any aspects of AHS's creation and ongoing close relationship with county government distinguish it from the nonprofit corporation in *Gateway*." (*Stone*, at p. 1068.) "To the extent 'hallmarks of sovereignty' [citation] are required to make AHS an exempt public entity, those identified above [referring to the court's discussion of facts supporting public entity status] suffice." (*Ibid.*; see also *id.* at p. 1064 ["California has a great many governmental agencies. The fact that they are not all fully autonomous sovereigns does not nullify their governmental status."].)

Stone establishes that determining whether an entity is a public entity, and therefore exempt from certain Labor Code provisions, calls for a multi-faceted inquiry. An entity's powers are not the only indicia. Factors such as the circumstances of the entity's creation and its relationship with other governmental entities are also relevant. We perceive no reason this analysis does not apply equally to public entity status for purposes of the GCA's claims presentation requirement, and plaintiff provides no basis to conclude otherwise.

Plaintiff's other cited cases are unavailing. In *Knapp v. Palisades Charter High School* (2007) 146 Cal.App.4th 708 (*Knapp*), the Court of Appeal concluded a charter school, as a

20

nonprofit public benefit corporation, was not a public entity entitled to the GCA's claims presentation requirement. (*Id.* at p. 710.)  Although the school was chartered by the Los Angeles Unified School District (LAUSD), itself a public entity, that "chartering authority comprises the sole relationship" between the school and LAUSD.  (*Id.* at p. 717.)  Under the Education Code, the charter school was "an independent legal entity from its chartering authority," with "substantial freedom to achieve academic results free of interference by the LAUSD."  (*Ibid.*)  The school "has its own board of directors and budget, hires its own administrators and teachers, and has identified its own authorized agent for service of process."  (*Ibid.*)  The school's charter required it to carry its own insurance, indemnify LAUSD from any claims arising from the school, and be responsible for its own financial services.  (*Ibid.*)

Just as *Stone* rejected the comparison between AHS and a charter school operator (*supra*, 16 Cal.5th at p. 1068), we reject the comparison between PTSC and the charter school in *Knapp*.  As in *Stone*, "[m]any aspects of [PTSC's] creation and ongoing close relationship with [MTA] distinguish it from" a charter school.  (*Stone*, at p. 1068.)  PTSC was not simply chartered by MTA, but created by MTA under statutory authority, and PTSC cannot be said to have "substantial freedom" from MTA (*Knapp*, *supra*, 146 Cal.App.4th at p. 717) when PTSC's primary purpose is to provide services to MTA, and MTA's administrative code limits PTSC's authority and responsibilities to those assigned by MTA.  (See *Stone*, at pp. 1074–1075 [distinguishing AHS from charter school because "AHS was created pursuant to specific legislative authorization, not a charter, and its affairs are closely overseen by the Alameda County Board of Supervisors."].)

21

For the same reasons, plaintiff's other cited cases holding charter schools are not public entities are distinguishable. (See *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164;[5] *Los Angeles Leadership Academy, Inc. v. Prang* (2020) 46 Cal.App.5th 270; *Gateway*, *supra*, 9 Cal.App.5th 499.)

Plaintiff also cites *Lawson v. Superior Court* (2010) 180 Cal.App.4th 1372, which held the trial court erred in sustaining a demurrer based on governmental immunity. (*Id.* at pp. 1397–1398.) According to the complaint, the defendant entity was a private contractor operating a state prison. (*Id.* at p. 1397.) The Court of Appeal found no authority "that extends the governmental immunity set forth in the Tort Claims Act to a private entity working under contract for the State." (*Ibid.*)

*Lawson*, like plaintiff's other cited cases, does not address the instant circumstance of a nonprofit public benefit corporation formed by a governmental entity under statutory authorization, which governmental entity also dictates the nonprofit public benefit corporation's powers. *Lawson* is thus not instructive.

In sum, PTSC is a public entity for purposes of the GCA's claims presentation requirement.

## C. Plaintiff May Amend His Complaint To Allege PTSC's Noncompliance with Registration Requirements for Public Agencies, Which Would Excuse Him From the Claims Presentation Requirement

Alternatively, plaintiff argues, to the extent PTSC is a public entity, PTSC has not demonstrated it has satisfied its obligation to register on the Registry of Public Agencies, which

---

[5] *Knapp* relied heavily on *Wells* and followed its reasoning. (*Knapp*, *supra*, 146 Cal.App.4th at pp. 716–717.)

failure would excuse him from filing a government prelitigation claim.  We agree plaintiff is entitled to amend his complaint to include this allegation.

Section 53051, subdivision (a) requires a public agency, "[w]ithin 70 days after the date of commencement of its legal existence," to file a form with the Secretary of State "and with the county clerk of each county in which the public agency maintains an office" stating the name of the agency, its governing body's mailing address, and the names and addresses of each member of the agency's governing body as well as its presiding officer and clerk or secretary.  This information is kept in a " 'Registry of Public Agencies' " maintained by the Secretary of State and "the county clerk of each county."  (§ 53051, subd. (c).)[6]  For purposes of section 53051, a "public agency" is "a district, public authority, public agency, and any other political subdivision or public corporation in the state, but does not include the state or a county, city and county, or city."  (§ 53050.)

Our Supreme Court has stated the purpose of section 53051 is "to provide a means for identifying public agencies and the names and addresses of designated officers needed to enable or assist a person to comply with any applicable claims procedure." (*Tubbs v. Southern Cal. Rapid Transit Dist.* (1967) 67 Cal.2d 671, 676 (*Tubbs*).)  In other words, section 53051 serves to facilitate, inter alia, the GCA's claims presentation requirement.

Accordingly, a litigant is excused from the GCA's claims presentation requirement "if, during the 70 days immediately following the accrual of the cause of action, either of the following

---

[6] The Registry of Public Agencies previously was called the "Roster of Public Agencies."  (See Stats. 2019, ch. 329, § 14 [changing "Roster" to "Registry"].)

23

apply:  [¶]  (1) No statement pertaining to the public agency is on file, or is placed on file, in the Registry of Public Agencies in the office of the Secretary of State and of the county clerk of each county in which the public agency then maintains an office, as required by Section 53051.  [¶]  (2) A statement or amended statement pertaining to the public agency is on file, or is placed on file, in the Registry of Public Agencies in the office of the Secretary of State and of the county clerk of each county in which the public agency then maintains an office, but the information contained therein is so inaccurate or incomplete that it does not substantially conform to the requirements of Section 53051." (§ 946.4, subd. (a); see *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 715 ["If a public agency fails to file the pertinent information the claim presentation requirements are eliminated."].)

When a plaintiff alleges a public agency has not complied with the registration requirements, it is the public agency's burden to prove compliance.  (§ 946.4, subd. (b).)  Despite this burden, and despite plaintiff's raising the issue of registration below, defendants offered no evidence of PTSC's compliance in the trial court, nor did they in their initial briefing on appeal. Instead, defendants argued, and the trial court found, PTSC was not required separately to comply with section 53051 because, under MTA's administrative code, PTSC is an " 'organizational unit' " of MTA " 'subject to all the governmental privileges and immunities enjoyed by the MTA.' "

In response to this court's supplemental briefing request for further discussion of the registration requirement, defendants clarified that PTSC is its own "public agency under Government Code section 53050."  By statute, all public agencies must comply

24

with section 53051, and PTSC, for the first time, as part of its supplemental briefing, provided documentation indicating PTSC registered with the Secretary of State as of August 7, 2000.[7]

As an initial matter, we reject defendants' original argument, and the trial court's conclusion, that PTSC's relationship with MTA excuses it from section 53051's registration requirement. Defendants have consistently argued PTSC is a "public agency," including under section 53050. The trial court also expressly found PTSC is a "public agency." By statute, all public agencies must comply with section 53051.

PTSC's relationship with MTA does not excuse PTSC from section 53051's registration requirement. Defendants cite no statutory or case authority that a public agency may extend its own registered status to another public agency via an administrative code or any other method. The purpose of the Registry of Public Agencies is to "assist a person to comply with any applicable claims procedure." (*Tubbs*, *supra*, 67 Cal.2d at p. 676.) This purpose would be ill served if a litigant could not rely on that Registry, but instead, must also investigate whether an unregistered agency nonetheless is sufficiently tied to another registered agency to merit prelitigation notice. Yet that would be the outcome were we to accept defendants' argument. We reject the contention that MTA's administrative code shields PTSC from noncompliance with section 53051.

As noted above, in their supplemental briefing, defendants changed tack and now argue PTSC, in fact, has complied with the

---

[7] We question why defendants did not provide this evidence in the trial court, which would have simplified the issues on appeal and obviated the need for two rounds of supplemental briefing.

registration requirement.  In his supplemental briefing, plaintiff contends PTSC has yet to demonstrate compliance because 1) PTSC did not register "[w]ithin 70 days after the date of commencement of its legal existence" (§ 53051, subd. (a)), and 2) defendants' evidence does not indicate PTSC registered with "the county clerk of each county in which the public agency then maintains an office" (§ 946.4, subd. (a)(1)).

As to plaintiff's first argument, although he is correct section 53051 requires a public agency to register within 70 days after it comes into existence, section 946.4 does not so require. Rather, section 946.4 requires only that the agency's registration be on file "during the 70 days immediately following the accrual of the cause of action."  (§ 946.4, subd. (a).)  Thus, even if an agency fails to meet the 70-day deadline under section 53051, it nonetheless is entitled to the benefit of the GCA's claims presentation requirement if the agency's registration is on file during the 70 days immediately after the plaintiff's cause of action accrues.

Plaintiff's second argument has merit.  In the request for judicial notice accompanying their supplemental briefing, defendants provided evidence PTSC registered with the Secretary of State but have provided no evidence PTSC also registered with the county clerk in each county in which it maintains an office, as required under section 946.4, subdivision (a)(1).  Absent that evidence, defendants have not demonstrated compliance with section 53051 or section 946.4.

Defendants argue, and the trial court agreed, plaintiff's invocation of sections 946.4 and 53051 was procedurally improper because he raised them in his opposition to the demurrer rather than alleging PTSC's lack of compliance in the complaint.  We

26

construe plaintiff's invocation of those sections, both below and here on appeal, as a proffer of how he might amend his complaint to state a claim, something he may do even for the first time on appeal. (*Heshejin*, *supra*, 54 Cal.App.5th at p. 992.) Defendants have not demonstrated plaintiff cannot allege PTSC's lack of compliance, given the absence of evidence of registration with one or more county clerks. We therefore conclude the trial court abused its discretion by not granting leave to amend to add allegations concerning PTSC's lack of compliance with sections 53031 and 946.4.

In so holding, we express no opinion whether PTSC in fact has not registered with the relevant county clerks, evidence defendants may present on remand. Nor does this opinion prevent plaintiff from challenging the validity of the evidence of PTSC's registration with the Secretary of State, apart from the argument we have rejected, to wit, that the registration fails for not having been filed within 70 days of PTSC's commencement. We also express no opinion on defendants' motion to strike or alternative grounds for demurrer apart from the GCA's claims presentation requirement. The trial court may address the motion to strike and any such alternative grounds for demurrer on remand.

## DISPOSITION

The judgment in favor of Los Angeles Metropolitan Transportation Authority is affirmed.  The judgment in favor of Public Transportation Services Corporation is reversed and the matter remanded for further proceedings consistent with this opinion.  Andrew Black is awarded his costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.